1GREMILLION, Judge.
The plaintiffs, Donald and Dariel Mos-ing, appeal the trial court’s grant of summary judgment in favor of the defendant, Travelers Casualty and Surety Company. Travelers appeals the trial court’s finding that an uninsured motorist (UM) policy issued to the Mosings by Aetna Casualty and Surety Company included punitive damages. For the following reasons, we reverse the trial court’s judgment invalidating a rejection of UM coverage by Frank’s Casing Crew and Rental Tools, Inc. and affirm the award of punitive damages.
FACTS
On September 4, 1990, Donald was traveling south on Roselawn Boulevard in Lafayette, Louisiana, when his vehicle was struck by a 1988 red Toyota Supra driven by Kirk Domas. Donald, the president and CEO of Frank’s Casing Crew, was driving a company-owned 1990 Pontiac Bonneville insured by Stonewall Surplus Lines Insurance Company. Domas, who was traveling west on Leon Drive, was intoxicated and traveling at- a high rate of speed in order to elude a hit and run accident he caused on Johnston Street. The accident at issue occurred when he failed to obey the stop sign at the intersection of Leon Drive and Roselawn Boulevard. Domas had previously been cited with several DWI’s for which his driver’s license was suspended. After hitting Donald’s vehicle, Domas fled the scene on foot, but was picked up by police shortly thereafter. Minutes after the accident occurred, Dariel arrived at the scene and, upon seeing the condition of her husband, feared that he was dead or mortally wounded.
|2The Mosings filed suit against Domas and his vehicle’s insurer, Automotive Casualty Insurance Company, seeking damages and punitive damages as a result of the accident. Aetna, Donald’s UM provider, was later added as an additional defendant. On a motion for summary judgment, the trial court granted judgment in the Mosings’ favor finding that Aetna’s UM policy provided coverage for punitive damages. On August 12, 1994, the Mos-ings added the Louisiana Insurance Guaranty Association (LIGA) as a defendant after Automotive Casualty was declared insolvent. In its answer, LIGA admitted that it was assuming the responsibilities of Automotive Casualty pursuant to the Insurance Guaranty Act.
On December 8, 1997, approximately seven years after suit was initially instituted, Travelers (the successor to Aetna) filed a motion for summary judgment arguing *1108 that the UM rejection executed by Frank’s Casing Crew in Stonewall’s policy was invalid because it failed to comply with the law and jurisprudence of Louisiana. Accordingly, it argued that Stonewall’s policy provided UM coverage to Donald as a result of the accident. Following a hearing on January 5, 1998, the trial court granted the motion for summary judgment finding that Stonewall’s form did not provide a valid waiver of UM coverage, thus, Donald was provided UM coverage via its insurance policy.
Two days later, on January 7, 1998, the Mosings filed suit against Stonewall alleging that it was liable to them for damages if the UM rejection form contained in its insurance policy issued to Frank’s Casing Crew was invalid. On February 3, 1998, a motion was granted consolidating the two suits. Thereafter, Stonewall filed a Motion to Reconsider and/or for Summary Judgment requesting the |3trial court to reconsider its prior ruling in favor of Travelers finding its UM rejection form invalid. This motion was denied. Stonewall then filed a supplemental answer specifically pleading a deductible endorsement contained in the policy issued to Frank’s Casing Crew, which provided a per occurrence deductible of $250,000. On May 7, 1999, the Mosings dismissed their claims against Stonewall with prejudice.
On June 26, 2000, prior to the selection of a jury, Travelers filed a motion for summary judgment seeking to be dismissed from the suit based on the fact that the Stonewall policy issued to Frank’s Casing Crew provided $1,000,000 in coverage, Aetna had previously made an unconditional tender of $20,000, and the evidence did not support an award exceeding $1,020,000. The trial court granted judgment in Travelers’ favor dismissing the Mosings’ claims against it with prejudice. The matter then proceeded to trial against the remaining defendant, Domas, who failed to appear for trial. Following the jury trial, a verdict was reached awarding Donald $30,084 in general damages and medical expenses; Dariel $10,000 for loss of consortium; Frank’s Casing Crew $15,475 for property damage; and Donald and Dariel $500,000 in punitive damages. A judgment was rendered in this matter on June 30, 2000. These appeals by the Mosings and Travelers followed. On November 22, 2000, a Judgment of Dismissal was rendered by the trial court dismissing the Mosings’ claims against LIGA with prejudice after a compromise of their claims. In an unpublished opinion, this court dismissed the Mosings’s appeal in Mosing v. Stonewall Surplus Lines Ins. Co., 01-266 (La.App. 3 Cir. 5/16/01), based on their dismissal of their claims against Stonewall after a compromise of their claims on May 7,1999.
I ¿ISSUES
On appeal, the Mosings argue that the trial court erred in ruling that the UM rejection form found in the Stonewall policy was invalid. Travelers also appeals arguing that the trial court erred in finding that Aetna’s UM policy provided coverage for punitive damages; that the Mosings failed to introduce any evidence of Domas’ uninsured/underinsured status; and that the punitive damage award by the jury was grossly excessive. The Mosings counter by arguing that the punitive damage award is insufficient.
SUMMARY JUDGMENT
On appeal, summary judgments are reviewed de novo. Magnon v. Collins, 98-2822 (La.7/7/99); 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks in determining whether summary judgment is appropriate. Id. This inquiry seeks to determine whether *1109 any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). Summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ.P. art. 966(A)(2).
UNINSURED/UNDERINSURED STATUS
In its second assignment of error, Travelers argues that the Mosings failed to offer any proof of the extent of Domas’ insurance coverage; thus, there is no proof of his uninsured/underinsured status in the record. Accordingly, it argues that Aet-na’s UM coverage does not apply.
IsWe disagree. As pointed out by the Mosings, LIGA admitted in its answer that it had “assumed the obligations of the Automotive Casualty Insurance Company with respect to this particular claim, subject to the terms and limits of the Insurance Guaranty Act.” Pursuant to the 1990 amendment, which became effective on June 29, 1990, La.R.S. 22:1386(1), entitled “Nonduplication of recovery,” provided in part:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage.
(Emphasis added).
Since Donald’s accident arose after the effective date of the 1990 amendment to La.R.S. 22:1386, he was first required to exhaust his uninsured motorist coverage under any other policy availing him of coverage before seeking recovery from LIGA. Segura v. Frank, 93-1271, 93-1401 (La.1/14/94); 630 So.2d 714, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994). Accordingly, the extent of Do-mas’ coverage with Automotive Casualty is irrelevant and this assignment of error is being dismissed as being without merit.
REJECTION OF UM COVERAGE
In their only assignment of error, the Mosings argue that the trial court erred in finding that the UM rejection form provided by Stonewell and executed by Frank’s Casing Crew was invalid. We agree and reverse the judgment of the trial court.
J^La.R.8. 22:1406(D)(l)(a)(i) mandates that all automobile liability insurance policies issued in this state must provide UM coverage in an amount not less than the bodily injury liability limits unless the insured has rejected such coverage in writing or selected lower limits. The aim of UM legislation is to promote full recovery for innocent automobile victims by making UM coverage available for their benefit. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). In order to carry out this objective, the UM statute is to be liberally construed and the statutory exceptions to the coverage requirement strictly construed. Id. The burden of proving the rejection of UM coverage or the selection of lower limits rests with the insurer. Id. A valid rejection must be in writing and signed by the insured or his authorized representative. Daigle v. Authement, 96-1662 (La.4/8/97); 691 So.2d 1213.
Concerning the UM rejection form, the Daigle court stated:
In Tugwell, we held that a rejection form used by an insurance company must inform the applicant of the available options regarding UM coverage so that the applicant can make a meaning *1110 ful selection from among the options provided by the statute. A form does not meet the statutory requirements if it fails to inform the applicant of an available option or forecloses an available option. We recognized in Tugwell that the statute normally provides three options: UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits, or no UM coverage.
Id. at 1215.
In this instance, the UM rejection form provided by Stonewall provides:
UNINSURED/UNDERINSURED MOTORISTS OPTION FORM
11. Please complete and return this form by indicating your option below. Effective _, please issue/renew/endorse my policy as follows:
17._ I do not want Uninsured/Under-insured Motorists Coverage.
___ I want Uninsured/Underinsured Motorists Coverage with limits that I have indicated below and the Bodily Injury Uninsured/Un-derinsured Motorists limits of my primary automobile policy are at least equal to the Public Automobile Liability limits of my primary policy.
LIMIT OF LIABILITY
*BODILY INJURY UNINSURED/UN-DERINSURED MOTORISTS
_ $ 25,000.00
_ 100,000.00
_ 300,000.00
_ 500,000.00
_ 1,000,000.00
_ Other
*UNINSURED / UNDERINSURED MOTORISTS LIMIT SELECTED MAY NOT BE GREATER THAN POLICY LIMIT.
NOTE: If you desire to change your election of Uninsured / Underinsured Motorists Coverage during the term of this policy or at some future renewal date, YOU MUST NOTIFY THE COMPANY OR ITS AUTHORIZED AGENT IN WRITING.
After considering the form, we find that it was sufficient to establish a valid rejection since it placed Frank’s Casing Crew in the position of making a “meaningful selection” from the three choices mandated by La.R.S. 22:1406(D)(l)(a)(i): (1) UM coverage equal to the bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits; or (3) no UM coverage. Although |sthe form does not list the three options in the order stated in Daigle, it specifically and unambiguously gave Frank’s Casing Crew the option of choosing UM coverage in the amount of its bodily injury limits ($1,000,000), in lesser amounts than its bodily injury limits, or reject UM coverage completely. Although the form does not state that Frank’s Casing Crew can choose UM coverage in the minimum amount allowed by law ($10,000), it does allow it to choose “Other” ad includes a blank space to be filled in by the insured. Since the form states that the insured may not choose UM coverage in an amount to exceed its policy limits ($1,000,-000), “Other” infers a lower amount. Since the Stonewall form informed Frank’s Casing Crew of all available options and did not foreclose an -available option, we find that it meets the statutory requirements of La.R.S. 22:1406(D)(l)(a)(i).
We further disagree with the several contentions made by Travelers’ as to why Frank’s Casing Crew’s UM rejection was invalid. Although the Stonewall policy was issued to Frank’s Casing Crew on November 1, 1989, and the UM rejection form was not executed until November 22, 1989, this does not render the UM rejection invalid. A rejection of UM coverage occurring after the effective date of an insurance policy will be effective, but *1111 only from the date the rejection form is executed, not from the date of the insurance policy’s issuance. Savant v. American Central Ins. Co., 98-542 (La.App. 3 Cir. 12/9/98); 725 So.2d 43, writ denied, 99-0060 (La.3/12/99); 739 So.2d 202. Nor is it required that an insurance policy or a rejection form provide an insured with a written definition of UM coverage in order for the insured to make a valid rejection of such coverage. Daigle, 691 So.2d 1213. Moreover, this court has recently held that a UM rejection form is not required to 1 ainfoim an insured that Louisiana law mandates UM coverage unless such coverage is rejected by the insured. Thomas v. Safeway Ins. Co., 00-700 (La.App. 3 Cir. 12/6/00); 775 So.2d 1135, writ denied, 01-0039 (La.3/23/01); 788 So.2d 426. As long as the rejection form informs the insured of its three options pursuant to La.R.S. 22:1406(D)(l)(a)(i) it ■ qualifies as a valid waiver of UM coverage.
Since we find no ambiguity in the Stonewall form, the judgment of the trial court invalidating Frank’s Casing Crew’s rejection of UM insurance coverage is reversed.
PUNITIVE DAMAGES
In its first assignment of error, Travelers argues that the trial court erred in finding that Aetna’s UM policy provided coverage for punitive damages. It claims that the 1992 amendment to La.R.S. 22:1406(D)(l)(a)(i), which added, “The coverage provided under this Subsection may exclude coverage for punitive or exemplary damage by the terms of the policy or contract,” is interpretive and, thus, applies retroactively to the case at hand. Since Aetna’s policy specifically excluded coverage for punitive damages in its UM coverage, Travelers argues that the trial court erred in finding such coverage applicable. We disagree.
Prior to 1992, insurers were not able to exclude punitive or exemplary damages from UM coverage. After the amendment of La.R.S. 22:1406(D)(l)(a)(i), an insurer could exclude such damages from its UM coverage by the terms of its policy or contract. The Aetna policy was issued to Donald on April 14, 1990. In Sharp v. Daigre, 555 So.2d 1361 (La.1990), the supreme court stated that La .R.S. 22:1406 requires symmetrical treatment of liability and UM policies. Thus, prior to Imthe 1992 amendment, if punitive damages were not excluded under the liability section of the policy, then they could not be excluded under the UM section of the policy. In this instance, the liability portion of Donald’s policy did not exclude punitive damages, thus, the UM portion could not exclude such damages.
This holds true even after the 1992 amendment to La.R.S. 22:1406(D)(l)(a)(i). As stated in Segura, 630 So.2d at 722-23 (footnote omitted), quoting Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983), “Where the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute.” In a footnote, the court stated, “Under Block, therefore, the relevant time for determining whether a change in the law retroactively affects an insurer’s or insured’s rights and obligations is when the policy is issued.” Segura, 630 So.2d at 723, n. 21. Accordingly, this assignment of error is dismissed as being without merit.
AMOUNT OF PUNITIVE DAMAGES
In its final assignment of error, Travelers argues that the amount awarded in punitive damages by the jury is excessive. The jury awarded the Mosings *1112 $500,000 in punitive damages. On the 'other hand, the Mosings argue that this amount is too low.
Article 2315.4 of the Louisiana Civil Code provides that exemplary damages may be awarded in addition to special and general damages “upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while | n operating a motor vehicle was a cause in fact of the resulting injuries.” The trier of fact has much discretion in fixing exemplary damages. Riser v. Acadiana Limousine Service, Inc., 96-1687 (La.App. 3 Cir. 4/30/97); 693 So.2d 330, writ denied, 97-1420 (La.9/19/97); 701 So.2d 173.
The evidence presented at trial established that Domas had a long history of alcohol-related offenses. He was arrested and convicted of operating a vehicle while intoxicated on October 7, 1982, in Shreveport, Louisiana. On July 2, 1986, he was convicted of driving while intoxicated on January 18, 1986, in Lafayette, Louisiana. On March 15, 1988, Deputy David Menard, of the Lafayette Parish Sheriffs Department, testified that he was working an off-duty security detail in full uniform at the Poet’s Restaurant and Lounge in Lafayette, when Domas dropped someone off at the restaurant. He stated that Domas was holding his brakes, revving his engine, and spinning his tires amongst the patrons entering and exiting the restaurant. When he asked Domas to step out of his vehicle, Menard stated that Domas asked to park his car and then parked it at the entrance and exit to the parking lot. When he approached the vehicle and asked for Do-mas’ license, Menard testified that Domas asked why he needed his license and then took off out of the parking lot. Menard stated that Domas lost control of his vehicle and stalled it as he hit a dirt embankment trying to enter James Comeaux Road. When he ran to the vehicle and opened the driver’s side door to pull Do-mas out of the ear, Menard stated that Domas started his vehicle and reversed it and tried to hit him with the vehicle’s door as he backed up. Menard testified that he only avoided being hit with the door by jumping out of the way. He stated that Domas then sped off down James Co-meaux Road |12towards Kaliste Saloom. Menard testified that Domas appeared intoxicated because his speech was slurred and he smelled of alcohol. As a result of this incident, Domas was cited with Reckless Operation of a Motor Vehicle and Resisting Arrest by Flight on March 21, 1988. His driver’s license was suspended shortly after this incident.
On April 6, 1989, Domas was ticketed for operating a vehicle while intoxicated, third offense, but pled guilty to second offense DWI. On May 1, 1990, Domas was arrested by Deputy Menard for operating a vehicle while intoxicated, second offense, and driving under suspension. At the time, he refused to take a field sobriety test and later the Intoxilyzer test. On July 29, 1990, he was arrested for operating a motor vehicle in the City of Lafayette with an open container of alcoholic beverage in a vehicle.
On September 4, 1990, Domas was involved in a hit and run accident shortly before the incident at issue. Benjamin Bernard testified that he was traveling north on Johnston Street at approximately forty miles per hour when his vehicle was struck from the rear by a red sports car. After pulling into a parking lot, Bernard stated that he got out of his vehicle and started towards the other vehicle, which had also pulled off the road. He testified that the other driver, Domas, initially got out of his vehicle, but got back into it and took off around him, smirking at him as he passed him. Bernard stated that he then got back into his vehicle and followed Do- *1113 mas, who turned onto Rena, driving very fast through the neighborhood. Bernard stated that he found Domas’ vehicle shortly thereafter, damaged from the collision with Donald’s vehicle. When he stopped at the accident scene, he testified that he was told Domas had left the scene on foot. He stated that he later saw Domas in the back of a police car. As a result of these two accidents, Domas was charged with and pled | i.qguilty to operating a vehicle while intoxicated, third offense.
In Rivera v. United Gas Pipeline Co., 96-502, 96-503, 97-161, pp. 6-7 (La.App. 5 Cir. 6/30/97); 697 So.2d 327, 334, writ denied, 97-2030, 97-2031 (La.12/12/97); 704 So.2d 1196, 1197 (citation omitted), the court explained the purpose of punitive damages:
While the purpose of ordinary damages is to compensate the victim, the purpose of punitive damages is to punish and deter wrongdoers. Such damages are given to the plaintiff over and above full compensation for his injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant’s example.
Accordingly, in punitive damage awards, the emphasis is not on the plaintiff and his hurt but on the defendant and his conduct. It is not so much the particular tort committed as the defendant’s motives and conduct in committing it, which will be important as the basis of the award. Thus, punitive damages have more to do with the tortfeasor than with the victim and are regarded as a fine or a penalty for the protection of the public interest.
After reviewing the evidence presented to the jury, we cannot say that it abused its much discretion in awarding the Mos-ings’ $500,000 in punitive damages for the harm suffered by them as a result of Do-mas’ intoxication. Considering his past history and continued use of alcohol while operating a motor vehicle, even in the face of his past convictions, we feel that the award should adequately punish and deter Domas, as well as others, from not only drinking and driving, but in failing to obey the rules of civilized society and for their wanton disregard of the rights and safety of others. Accordingly, the jury’s award of $500,000 in punitive damages is affirmed. Travelers assignment of error is dismissed as being without merit. We further reject the Mosings’ argument that the award is insufficient.
^CONCLUSION
For the foregoing reasons, the judgment of the trial court invalidating Frank’s Casing Crew and Rental Tools, Inc.’s rejection of uninsured motorist coverage is reversed. The judgment of the trial court awarding the plaintiffs-appellants/appel-lees, Donald and Dariel Mosing, $500,000 in punitive damages is affirmed. The costs of this appeal are assessed to the defendant-appellant/appellee, Travelers Casualty and Surety Company.
AFFIRMED IN PART AND REVERSED IN PART.