830 So.2d 967 (2002)
Donald Eugene MOSING, Dariel Parker Mosing, and Frank's Casing Crew & Rental Tools, Inc.
v.
Kirk P. DOMAS and Automotive Casualty Insurance Company.
Donald Eugene Mosing, Dariel Parker Mosing, and Frank's Casing Crew & Rental Tools, Inc.
v.
Stonewall Surplus Lines Insurance Company.
No. 2002-C-0012.
Supreme Court of Louisiana.
October 15, 2002.
Rehearing Denied December 13, 2002.
*970 WEIMER, Justice.
We granted this writ to review the propriety of an award of $500,000.00 in exemplary damages assessed against an intoxicated driver pursuant to LSA-C.C. art. 2315.4. In doing so, we consider the appropriate standard of review to apply in evaluating the amount of exemplary damages awarded by a jury or trial court in light of the recent decision of the U.S. Supreme Court in Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), which requires de novo review of exemplary damage awards challenged as being excessive under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Finding that the defendant failed to raise a federal constitutional due process challenge to the amount of the exemplary damage award in this case, we apply state standards to determine the excessiveness of the award. Applying those standards, we conclude that the jury did not abuse its discretion in awarding the plaintiffs $500,000.00 in exemplary damages and affirm the decision of the court below.

FACTS AND PROCEDURAL HISTORY
On September 4, 1990, Donald Mosing, president and CEO of Frank's Casing Crew & Rental Tools, Inc., was driving a company-owned 1990 Pontiac Bonneville on Roselawn Boulevard in Lafayette, Louisiana, when a 1988 Toyota Supra driven by Kirk Domas ran a stop sign at the intersection of Leon Drive and Roselawn Boulevard, striking Mosing's vehicle broadside. Domas was intoxicated. Having previously been cited for multiple DWI's for which his driver's license had been suspended, Domas was proceeding at a high rate of speed through the quiet residential neighborhood in an effort to flee another accident he had caused just minutes earlier on Johnston Street. After striking Mosing's vehicle, Domas fled the scene of this accident on foot. He was apprehended by police a short time thereafter. Dariel Mosing arrived at the accident scene minutes after the impact and, upon seeing the condition of her husband, feared that he was dead or mortally wounded.
The Mosings filed suit against Domas and his vehicle's insurer, Automotive Casualty Insurance Company, seeking compensatory and exemplary damages. Although the vehicle Mr. Mosing was driving was insured under a business auto liability policy issued by Stonewall Surplus Lines Insurance Company, UM coverage on the *971 policy had been rejected. Mr. Mosing's personal vehicle was insured by Aetna Casualty and Insurance Company, and that policy provided UM coverage. Accordingly, the Mosings amended their petition to add Aetna as an additional defendant. Pursuant to a motion for summary judgment, the trial court decreed that Aetna's UM policy provided coverage for punitive damages. Domas' insurer, Automotive Casualty, became insolvent, and on August 12, 1994, the Louisiana Insurance Guaranty Association (LIGA) was added as a defendant in its stead.
On December 8, 1997, approximately seven years after suit was originally instituted, Aetna (now Travelers)[1] filed a motion for summary judgment asserting that Frank's Casing Crew & Rental Tools, Inc.'s rejection of UM coverage in the Stonewall policy was invalid. Following a contradictory hearing, the trial court granted the motion for summary judgment. The court found that Stonewall's policy did not effect a valid waiver of UM coverage and that, as a result, Stonewall provided UM coverage for the vehicle operated by Mosing on the date of the accident.
The Mosings filed a separate suit against Stonewall, alleging that it was liable for damages if the UM rejection form contained in the policy issued to Frank's Casing Crew & Rental Tools, Inc. was invalid. This suit was consolidated with the suit against Domas, LIGA, and Travelers. Stonewall filed a Motion to Reconsider and/or for Summary Judgment requesting that the trial court reexamine its ruling with respect to the validity of its UM rejection form. Stonewall's motion was denied. Thereafter, the Mosings settled their claims against Stonewall, dismissing their action against the insurer with prejudice.
The case came for trial on June 26, 2000. Prior to the selection of the jury, Travelers filed a motion for summary judgment seeking dismissal from the suit on the grounds that: (1) its coverage would not be triggered unless the Mosings' compensatory and exemplary damage claims exceeded Stonewall's UM policy limits; (2) the Stonewall policy issued to Frank's Casing Crew & Rental Tools, Inc. provided $1,000,000.00 in coverage; (3) Travelers had previously made an unconditional tender of $20,000.00; and, (4) the evidence did not support an award exceeding $1,020,000.00. After the Mosings stipulated that their claims did not exceed $1,000,000.00, the trial court granted the summary judgment, dismissing the Mosings' claims against Travelers with prejudice. The case proceeded to trial against the remaining defendant, Domas, who failed to appear for trial.
Following the jury trial, a verdict was rendered in favor of the Mosings and against Domas, awarding Mr. Mosing $30,084.00 in general damages and medical expenses; Mrs. Mosing $10,000.00 for loss of consortium; Frank's Casing Crew & Rental Tool, Inc. $15,475.00 for property damage to the vehicle; and Mr. and Mrs. Mosing $500,000.00 in exemplary damages. Judgment was signed on June 30, 2000. Thereafter, two appeals were filed. The Mosings appealed the interlocutory rulings of the trial court: (1) holding that the UM rejection form executed by Frank's Casing Crew & Rental Tools, Inc. was invalid and that the policy issued by Stonewall provided UM coverage; and (2) dismissing Travelers from the lawsuit based on the coverage provided by Stonewall. Travelers appealed the interlocutory *972 judgment of the trial court holding that its policy provided coverage for exemplary damages and the final judgment on the merits, signed June 30, 2000.
The Third Circuit Court of Appeal rendered its opinion on October 3, 2001. Mosing v. Domas, XXXX-XXXX (La.App. 3 Cir. 10/3/01), 798 So.2d 1105. It affirmed the judgment below in part and reversed in part. It reversed the judgment of the trial court invalidating the rejection of UM coverage in the policy issued to Frank's Casing Crew & Rental Tools, Inc. by Stonewall. It affirmed the finding that Travelers' UM policy provided coverage for exemplary damages, and it affirmed the award of $500,000.00 in exemplary damages. The effect of the Court of Appeal judgment was to place Travelers in the position of primary UM insurer and render it liable for the entire amount of the judgment, since Domas was grossly underinsured.
Travelers immediately applied for a rehearing from the Court of Appeal's decision, arguing that the Court of Appeal applied the wrong standard of review in affirming the amount of the exemplary damage award, that the amount of the award is constitutionally excessive, and that the judgment below erroneously awarded interest on the exemplary damage award from the date of judicial demand rather than from date of judgment. Rehearing was denied on November 28, 2001.
We granted certiorari to consider Travelers' contention that the $500,000.00 exemplary damage award is excessive. Mosing v. Domas, XXXX-XXXX (La.4/26/02), 813 So.2d 1095.

STANDARD OF REVIEW
Our analysis begins with a consideration of the appropriate standard of review to apply in reviewing the amount of exemplary damages awarded by a jury or trial court. Historically, in Louisiana, the amount of an exemplary damage award has been reviewed by the appellate courts for abuse of discretion. Demarest v. Progressive American Ins. Co., 552 So.2d 1329, 1334 (La.App. 5 Cir.1989); Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141, 1157 (La.App. 1 Cir.1993), writ denied, 623 So.2d 1335, 1336 (La.1993); Angeron v. Martin, 93-2381 (La.App. 1 Cir. 12/22/94), 649 So.2d 40, 44; Riser v. Acadiana Limousine Service, Inc., 96-1687 (La.App. 3 Cir. 4/30/97), 693 So.2d 330, 340, writ denied, 97-1420 (La.9/19/97), 701 So.2d 173; Dekeyser v. Automotive Cas. Ins. Co., 97-1251 (La.App. 4 Cir. 2/04/98), 706 So.2d 676, 687. This practice is similar to the one that has evolved under the common law.
Under the traditional common law model which has existed for nearly 240 years, juries have possessed vast discretion to determine the amount of exemplary damages necessary to inflict proper retribution and deterrence upon defendants who have committed particularly egregious torts. See Murphy, Punitive Damages, Explanatory Verdicts, and the Hard Look, 76 Wash.L.Rev. 995, 1002 (Oct.2001). Judicial interference with such awards has been typically reserved for the "glaring case ... of outrageous damages," one which "all mankind at first blush" would find outrageous. Honda Motor Co., Ltd. v. Oberg, 512 U.S. 415, 421-422, 114 S.Ct. 2331, 2335-2336, 129 L.Ed.2d 336 (1994), quoting Huckle v. Money, 2 Wils. 205, 95 Eng.Rep. 768 (C.P.1763).
In recent years, the U.S. Supreme Court has decided a number of cases raising exemplary damages issues. Most significantly, in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the *973 Court ruled that exemplary damage awards that are "grossly excessive" violate the Due Process Clause of the Fourteenth Amendment. The Court then provided three "guideposts" for gauging when an exemplary damage award crosses the constitutional line: (1) the reprehensibility of the defendant's conduct; (2) the ratio between the exemplary damage award and the harm the defendant's conduct caused, or could have caused; and (3) the size of any civil or criminal penalties that could be imposed for comparable misconduct. These constitutional constraints on the amount of exemplary damage awards were afforded more significance in Cooper Industries, Inc. v. Leatherman Tool Group, Inc., supra. Therein, the Supreme Court ruled that state and federal appellate courts must conduct a de novo review of claims that exemplary damage awards are grossly excessive in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Cooper, 532 U.S. at 433-434, 121 S.Ct. at 1685-1686. However, "[i]f no constitutional issue is raised, the role of the appellate court, at least in the federal system, is merely to review the trial court's `determination under an abuse-of-discretion standard." Id. at 433, 121 S.Ct. at 1684, citing Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Further, if the federal constitutional claim is not raised in the court below, any arguments regarding the constitutional issue on appeal are "unavailing." Id., 532 U.S. at 433 n. 7, 121 S.Ct. at 1684 n. 7.
By its terms, Cooper applies only to excessive exemplary damage claims raised under the federal constitution's due process clause. It does not reach excessiveness claims raised under state law and under common law. As a result, state and federal appellate courts remain free to review state law and common law excessiveness claims under an abuse of discretion standard. See Time Warner v. Six Flags Over Georgia, 254 Ga.App. 598, 563 S.E.2d 178, 181 (2002); Stroud v. Lints, 760 N.E.2d 1176, 1180 (Ind.App.2002).
Since its rendition, state and federal courts have struggled with the meaning and impact of Cooper and the federal due process/state law analytical split it has created. In its wake, some state appellate courts have embraced Cooper's de novo standard of review and apply it to all claims of excessive exemplary damages. See, e.g., Campbell v. State Farm Mut. Auto. Ins. Co., 432 Utah Adv. Rep. 44, ___ P.3d ___, 2001 WL 1246676 (Utah 2001), cert. granted, ___ U.S. ___, 122 S.Ct. 2326, 153 L.Ed.2d 158 (2002). Other states have chosen a different route and have declined to extend de novo review beyond its federal due process bounds. See Leisinger v. Jacobson, 651 N.W.2d 693 (S.D.2002); Time Warner v. Six Flags Over Georgia, 254 Ga.App. 598, 563 S.E.2d 178 (2002); Trinity Evangelical Lutheran Church v. Tower Ins. Co., 251 Wis.2d 212, 641 N.W.2d 504 (App.2002); Stroud v. Lints, 760 N.E.2d 1176 (Ind.App.2002). For the reasons expressed below, we follow the course adopted by these latter courts and decline the invitation to extend Cooper's de novo review beyond its federal constitutional bounds.
Exemplary damages in Louisiana reflect "a principle that has been borrowed from the common law, and, though tacitly and sometimes expressly recognized in our decisions, it is really an exotic in our system." Dirmeyer v. O'Hern, 39 La.Ann. 961, 964, 3 So. 132 (1887) (vacated on other grounds). Under Louisiana law, exemplary or other "penalty" damages are not allowable unless expressly authorized by statute. International Harvester Credit v. Seale, 518 So.2d 1039, 1041 (La.1988).
*974 When expressly authorized, the emphasis in evaluating exemplary damage awards is not on the damages sustained by the plaintiff, but rather on the conduct of the defendant. It is not so much the particular tort committed as the defendant's motives and conduct in committing it which will be important as the basis of the award. Thus, exemplary damages are more concerned with the conduct of the tortfeasor than with the damages of the victim and are regarded as a fine or penalty for the protection of the public interest. Rivera v. United Gas Pipeline Co., 96-502 (La.App. 5 Cir. 6/30/97), 697 So.2d 327, 334, writ denied, 97-2030, 97-2031, 97-2032, 97-2034 (La.12/12/97), 704 So.2d 1196, 1197, citing Billiot v. B.P. Oil Co., 93-1118 (La.9/29/94), 645 So.2d 604, overruled on other grounds, Adams v. J.E. Merit Const., Inc., 97-2005 (La.5/19/98), 712 So.2d 88.
The determination of the proper amount of exemplary damages to award in a given case is an intensely fact-sensitive undertaking. The jury must consider not merely the act, but all of the circumstances surrounding it, including the extent of harm or potential harm caused by the defendant's misconduct, whether the defendant acted in good faith, whether the misconduct was an individual instance or part of a broader pattern, whether the defendant behaved recklessly or maliciously, and even, in appropriate circumstances, the wealth of the defendant. See J. Bolin, Enter Exemplary Damages, 32 La.B.J. 216, 218 (1984); RESTATEMENT (SECOND) OF TORTS § 908 cmt. e (1979). Such fact-driven determinations are the unique province of the jury or trier of fact. Boyette v. United Services Auto. Ass'n, XXXX-XXXX (La.4/3/01), 783 So.2d 1276, 1280. Recognition of this principle underlies La Civ.Code art. 2324.1, which directs that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." See also LSA-C.C. art.1999 directing that "[w]hen damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages."
In Cooper, the Supreme Court based its holding requiring a de novo review of constitutional excessiveness claims on the determination that "[u]nlike the measure of actual damages suffered, which presents a question of historical or predictive fact, ... the level of punitive damages is not really a `fact' `tried' by the jury." Cooper, 532 U.S. at 437, 121 S.Ct. at 1686. Rather, it is more in the nature of a subjective determination as to the amount necessary to punish and deter. ("A jury's assessment of the extent of a plaintiff's injury is essentially a factual determination, whereas its imposition of punitive damages is an expression of its moral condemnation." Id., 532 U.S. at 432, 121 S.Ct. at 1683). While we recognize that to some extent the assessment of the amount of exemplary damages necessary to punish and deter particular conduct involves a judgment or policy choice about the severity of the penalty to be imposed, nevertheless the degree of punishment to be inflicted is inextricably tied to the particular facts of each case, rendering the determination a mixed question of law and fact entitled to deference by the appellate courts. See Elevating Boats, Inc. v. St. Bernard Parish, XXXX-XXXX (La.9/5/01), 795 So.2d 1153, 1172. Such deference is, as pointed out above, directed by the provisions of our Civil Code. See LSA-C.C. art. 2324.1. It is also appropriate given that the legislature, in enacting LSA-C.C. art. 2315.4, did not place a cap on the amount of exemplary damages awardable under this provision, deliberately leaving *975 this assessment to the discretion of the jury. Other "penalty" statutes in Louisiana have such caps. See, e.g., LSA-R.S. 51:1409 (assessing triple damages and attorney's fees for the knowing use of an unfair or deceptive trade practice); LSA-R.S. 3:4278.1 (allowing triple damages for cutting down trees on the land of another, knowingly and without authorization); LSA-R.S. 9:3552 (permitting triple finance charges plus attorney's fees for bad faith violations of consumer credit transaction laws); LSA-R.S. 51:137 (providing for triple damages plus attorney's fees for violations of the monopoly laws).
Accordingly, we conclude that when an appellant has properly raised a federal due process claim, pursuant to Cooper, the reviewing court must conduct a de novo review of the exemplary damage award, utilizing the three "guideposts" set out in BMW of North America v. Gore, supra. However, when no constitutional claim is raised, the determination of whether an exemplary damage award is excessive under Louisiana law is properly reviewed for abuse of discretion, giving proper deference to the trier of fact's determination as to the appropriate amount of the award. Regardless of the standard of review that applies, in evaluating an exemplary damage award, appellate courts should utilize the BMW guideposts. The wealth of the defendant is also an appropriate factor to consider. The distinction between the differing standards of review is in the level of deference that is to be accorded to the trier of fact.

EXCESSIVENESS OF AWARD
A. Federal Due Process Challenge
In its brief to this Court, Travelers avers that the Court of Appeal erred in reviewing its claim of excessiveness for abuse of discretion rather than de novo, as required by Cooper. However, because Travelers failed to raise a constitutional due process challenge to the excessiveness of the exemplary damage award below, we find that any error with regard to the review of a federal constitutional claim was waived.
The longstanding jurisprudential rule of law in Louisiana is that litigants must raise constitutional attacks in the trial court, not the appellate courts, and that the constitutional challenge must be specially pleaded and the grounds for the claim particularized. Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859, 864.[2] Further, appellate courts generally will not consider issues raised for the first time on appeal. Segura v. Frank, 93-1271 (La. 1/14/94), 630 So.2d 714, 725.[3]
Admittedly, this case presents a unique procedural posture in that Travelers was dismissed from this suit at the beginning of trial on a motion for summary judgment. That summary judgment was based on an earlier trial court ruling determining *976 that the rejection of UM coverage on the policy issued by Stonewall to Frank's Casing Crew & Rental Tools, Inc. was invalid, and therefore Stonewall's policy provided the first layer of coverage for the Mosings' damages. Because the Mosings stipulated that their damages would not exceed $1,000,000.00 (the limits of Stonewall's policy), Travelers was dismissed from the case, which went to trial without any defendant, as Domas failed to appear.
Following the rendition of judgment, the Mosings appealed the summary judgment finding that Frank's Casing Crew & Rental Tools, Inc. had not made a valid rejection of UM coverage in the Stonewall policy. Travelers also appealed, although it was not required to do so in order to respond to the Mosings' appeal.[4]
In that appeal, Travelers assigned the following errors: (1) the lower court erred in finding that Travelers' policy provided coverage for punitive damages; (2) plaintiffs failed to introduce any evidence of the uninsured/underinsured status of the tortfeasor, Kirk Domas, as required for the recovery of damages; and (3) the award for punitive damages is grossly excessive. Significantly, in the argument section of its brief, Travelers failed to advance a constitutional due process excessiveness argument with respect to the amount of the exemplary damage award. It confined itself solely to arguing that the amount of the exemplary damage award in this case is excessive when compared to the amounts awarded in previous cases in Louisiana.[5]
The case was submitted to the Court of Appeal on the foregoing arguments. Thereafter, a decision was handed down in which the Court of Appeal reversed the trial court's determination that Frank's Casing Crew & Rental Tools, Inc.'s rejection of UM coverage in the Stonewall policy was invalid and affirmed the amount of the exemplary damage award. In a rehearing application filed in the Court of Appeal, Travelers raised its constitutional due process attack on the amount of the exemplary damage award for the first time. It also argued, for the first time, that legal interest on the punitive damage award should run from date of judgment rather than from date of judicial demand. These arguments came too late. See Gladney v. Sneed, 32,107 (La.App. 2 Cir. 8/18/99), 742 So.2d 642, writ denied, 99-2930 (La.1/14/00), 753 So.2d 215; Degrasse v. Elevating Boats, Inc., 98-1406 (La.App. 4 Cir. 3/10/99), 740 So.2d 660, writ denied, 99-1807 (La.10/15/99), 748 So.2d 1147; American Motorist Ins. Co. v. American Rent-All, Inc., 617 So.2d 944 (La.App. 5 Cir.1993) (As a general rule, the courts of appeal will not consider issues raised for the first time on application for rehearing.).
While, under the facts of this particular case, Travelers was not required to appeal in order to defend the judgment of the trial court, it did, and in doing so, it sought affirmative relief: a reduction in *977 the amount of the exemplary damage award.[6] Having appealed, Travelers was required to raise all perceived errors in connection with the exemplary damage award (especially errors of alleged constitutional magnitude) before the Court of Appeal in order to preserve those errors for review. See Boudreaux v. State, DOTD, XXXX-XXXX (La.2/26/02), 815 So.2d 7, 9 ("Except for the declinatory exception of lack of subject matter jurisdiction and the peremptory exceptions, two of which, prescription and res judicata, must be specially pleaded, we cannot consider contentions raised for the first time in this Court which were not pleaded in the court below and which the district court has not addressed."). Such a rule, while seemingly harsh, preserves the proper allocation of functions between the lower appellate courts and the Supreme Court by consigning the first appellate review to the court of appeal and preserving to this court discretionary review upon the litigant's petition for certiorari. See Buckbee v. United Gas Pipe Line Co., 561 So.2d 76, 86 (La. 1990). The purpose of the rule is thwarted when a litigant, such as Travelers, raises some, but not all, of its arguments on appeal and then, after a less than favorable result, urges the arguments it omitted on certiorari to this court.
Accordingly, while Travelers was not a party to the case at trial, and thus was not in a position to raise the constitutional challenge in the district court, it did appeal and in doing so, failed to assign as error the federal due process excessiveness claim it belatedly raises in this court. We cannot consider this claim, which was waived by the failure of Travelers to assert it timely in the court below. Boudreaux v. State, DOTD, supra; Geiger v. State ex rel. Dept. of Health, 2001-2206 (La.4/12/02), 815 So.2d 80, 86.[7]
B. State Law Excessiveness Claim
The lone claim that presents itself for resolution to this court is whether, under Louisiana law, the $500,000.00 exemplary damage award must be reduced. As explained above, the proper inquiry is whether the jury abused its discretion in setting the amount of the award.
The appellate courts in Louisiana have historically considered a number of factors in ascertaining whether an exemplary damage award is so great (or small) as to constitute an abuse of discretion. Those factors have been variously described to include: (1) the nature and extent of the harm to the plaintiff; (2) the wealth or financial situation of the defendant; (3) the character of the conduct involved; and (4) the extent to which such conduct offends a sense of justice and propriety. Jordan v. Intercontinental Bulktank Corp., 621 So.2d at 1157; Angeron v. Martin, 649 So.2d at 44; Lacoste v. Crochet, 99-0602 (La.App. 4 Cir. 1/5/00), 751 So.2d 998, 1005. See also Dekeyser v. Automotive Cas. Ins. Co., 706 So.2d at 687 (describing the relevant factors to include "the defendant, the defendant's conduct, the magnitude of the potential harm arising from it, and even the defendant's net worth, to assess the probability of deterrence."). The factors that may be considered *978 in deciding whether to award punitive damages include: "The amount necessary to deter the defendant and others like him from engaging in such conduct in the future, the wealth of the defendant, the severity of the harm with which the plaintiff was threatened, the compensatory damages awarded, the reprehens[i]bility of the defendant's conduct, the amount of any other punitive damages awarded against the defendant or with which the defendant is threatened, and any criminal punishment the defendant has suffered or may suffer as a result of the same conduct as that upon which the plaintiff's tort suit is based." FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA TORT LAW § 7-3(b), 167 (1996).
While this court has not previously spoken to the issue, we believe that the selection and evaluation of factors to consider in determining whether or not the amount of an exemplary damage award in a given case is an abuse of discretion must ultimately be governed by the purpose of exemplary damages. Such damages, we have explained, are given to the plaintiff over and above the full compensation for his or her injuries for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example. Billiot v. B.P. Oil Co., 645 So.2d at 612; see also Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (explaining that exemplary damages are "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence."). Thus, exemplary damages serve a threefold purpose: punishment, specific deterrence, and general deterrence. The damages awarded by a jury must be reasonable in amount and sufficient to satisfy these three objectives, but should be no more than that required to meet these objectives.
In assessing whether the objectives of exemplary damages are served by a particular jury award or whether the jury has abused its discretion in that award, we believe that the three guideposts for reviewing exemplary damage awards identified by the Supreme Court in BMW of North America, Inc. v. Gore, supra, are most instructive and represent appropriate factors to consider when reviewing an award of exemplary damages for excessiveness under Louisiana law. The BMW factors include: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm and/or potential harm suffered by the plaintiff and the exemplary damages award; and (3) the difference between the exemplary damages awarded by the jury and the civil or criminal penalties authorized or imposed in comparable cases. BMW, 517 U.S. at 574-574, 116 S.Ct. at 1598-1599. We note that two of the BMW factors, the reprehensibility of defendant's conduct and the ratio of exemplary damages to actual or potential harm, mirror three of the factors traditionally considered by Louisiana appellate courts in reviewing exemplary damage awards: the nature and extent of the harm to the plaintiff, the character of the conduct involved, and the extent to which such conduct offends a sense of justice and propriety. Jordan v. Intercontinental Bulktank Corp., 621 So.2d at 1157; Angeron v. Martin, 649 So.2d at 44.
The only non-BMW factor traditionally considered by Louisiana courts is the defendant's economic wealth. Id. We believe that a defendant's assets and income are relevant factors that may be considered in determining whether an award of exemplary damages is excessive: "The importance of the defendant's financial situation to the goals of punishment *979 and deterrence is obvious: What `may be awesome punishment for an impecunious individual defendant [may be] wholly insufficient to influence the behavior of a prosperous corporation.'" In re New Orleans Train Car Leakage Fire Litigation, XXXX-XXXX (La.App. 4 Cir. 6/27/01), 795 So.2d 364, 388, quoting Continental Trend Resources, Inc. v. OXY USA, Inc., 101 F.3d 634, 641 (10th Cir.1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997). However, we caution that the defendant's economic situation is only one of the factors that may be considered in determining whether an award of exemplary damages is excessive. Where, as in this case, there is an absence of such evidence, that lack of evidence does not necessarily render the amount of the exemplary damages so speculative as to constitute an abuse of discretion where the fact finder has other evidence to consider, such as the nature of the tort. See Woods-Drake v. Lundy, 667 F.2d 1198, 1203 n. 9 (5th Cir. 1982) (adopting the rule that it is the defendant and not the plaintiff who must carry the burden of introducing evidence of net worth if the defendant wishes these facts to be considered in awarding punitive damages); see also Kemezy v. Peters, 79 F.3d 33 (7th Cir.1996).
These prefatory remarks aside, we turn to an examination of the exemplary damage award in this case to determine if, considered in light of the BMW factors, it constitutes an abuse of the jury's discretion. In undertaking this evaluation, we do so mindful of the much discretion reserved to the jury in these matters. See LSA-C.C. art. 2324.1. As with the review of a general damage award, the role of an appellate court in reviewing an award of exemplary damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. "Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993).
In BMW of North America, Inc. v. Gore, supra, the Supreme Court stated that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." BMW, 517 U.S. at 575, 116 S.Ct. at 1599. In that case, the Court, in concluding that "none of the aggravating factors associated with particularly reprehensible conduct is present," noted, among other things, that the harm BMW inflicted on the plaintiff was "purely economic in nature" and that "BMW's conduct evinced no indifference to or reckless disregard for the health and safety of others." Id. at 576, 116 S.Ct at 1599. The situation in this case is vastly different. The record reveals that Domas has a long history of alcohol-related offenses involving driving that evince a substantial disregard for the health and safety of others. His conduct has resulted in serious physical, as opposed to purely economic, injury, and poses a clear threat to society at large.
Domas' history of alcohol-related offenses is well-documented in the record and span an eight-year period. He was first arrested and convicted of operating a vehicle while intoxicated on October 7, 1982, in Shreveport, Louisiana. That offense was followed with a July 2, 1986 conviction for driving while intoxicated in Lafayette, Louisiana. On March 15, 1988, Deputy David Menard of the Lafayette Parish Sheriff's Office had his first encounter with Domas. On that date, Menard was working an off-duty security detail at Poet's Restaurant and Lounge in Lafayette when Domas drove to the entrance of *980 the restaurant, holding his brakes, revving his engine, and spinning his tires in the midst of patrons attempting to enter the restaurant. When Menard asked Domas to step out of his vehicle, Domas asked if he could park his car first, but instead proceeded to block the entrance and exit to the parking lot. When Menard approached the parked car and asked for Domas' license, Domas sped off, ultimately losing control of the vehicle as he hit a dirt embankment trying to enter James Comeaux Road. Deputy Menard ran to the vehicle and opened the driver's side door in an attempt to pull Domas out of the car, but Domas re-started the stalled car, put it in reverse, and sped off, narrowly missing the deputy, who only avoided being hit with the open car door by jumping out of the way. As a result of this incident, Domas, who Deputy Menard testified appeared intoxicated because his speech was slurred and he smelled of alcohol, was cited with Reckless Operation of a Motor Vehicle and Resisting Arrest by Flight on March 21, 1988. His driver's license was suspended shortly after this incident.
On April 6, 1989, Domas was ticketed for operating a vehicle while intoxicated, third offense, but pled guilty to second offense DWI. On May 1, 1990, a few weeks later, Domas had a second encounter with Deputy Menard, who arrested him for operating a vehicle while intoxicated, second offense, and driving under a suspended license. On that occasion, Domas refused to take a field sobriety test and later the Intoxilyzer test. Just two months later, on July 29, 1990, Domas was arrested again, this time for operating a motor vehicle in the City of Lafayette with an open container of alcoholic beverage in the vehicle.
On August 22, 1990, less than two weeks prior to the incident giving rise to this litigation, Domas appeared in court and pleaded guilty to second offense DWI. He was ordered to pay a fine of $350.00 plus court costs and sentenced to serve a term of thirty days in the parish jail, said sentence being suspended upon the condition that Domas pay the fine and court costs and perform thirty (30) eight-hour days of community service work and enroll in and attend the Court Sobriety Program and the Alcohol and Drivers' Education Program. A mere 13 days later, Domas was back on the road, driving while under the influence of alcohol.
On that date, September 4, 1990, Domas was responsible for not one, but two accidents. Prior to striking Mr. Mosing's vehicle broadside, Domas had rear ended a vehicle driven by Benjamin Bernard. Mr. Bernard testified that at approximately 6:00 or 7:00 p.m. on September 4, 1990, he was traveling north on Johnston Street at approximately forty miles per hour when his vehicle was struck from the rear. Following the impact, he pulled to the side of the road and exited his car to approach the offending vehicle, which had also pulled off the road. According to Bernard, the driver of the offending vehicle, who he identified as Domas, initially got out of his vehicle, but suddenly got back in and sped off, smirking at Bernard as he passed him standing on the road. Bernard re-entered his vehicle and followed Domas. He testified that Domas drove very fast as he turned off Johnston Street. Since he was proceeding through a residential neighborhood, Bernard did not give chase, but followed the direction in which Domas had headed, looking for him. Approximately five minutes later, Bernard encountered Domas' smashed and abandoned vehicle at the intersection of Leon Drive and Roselawn Boulevard and Mr. Mosing slumped in his similarly wrecked vehicle, obviously injured. Bernard exited his car and was told that Domas had fled the scene on foot. As a result of these two incidents, Domas *981 was charged with and pled guilty to operating a vehicle while intoxicated, third offense.
The foregoing facts reveal Domas to be a shockingly unrepentant recidivist drunk driver who has on more than one occasion displayed a conscious disregard for human life and safety while behind the wheel. Not only is he chronically prone to endanger the public by driving while intoxicated, he appears to be more concerned with escaping the consequences of his outrageous conduct than with attending to the victims he leaves in his wake. His wanton and reckless behavior on the date of September 4, 1990, could hardly have been more reprehensible. Such egregious behavior supports the jury's assessment that the imposition of an exemplary damage award, higher than would ordinarily be affirmed, was warranted in this case. See, e.g., BMW, 517 U.S. at 579-80, 116 S.Ct. at 1600-01 (A high probability of recidivism justifies a higher than normal exemplary damage award).
"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." BMW, 517 U.S. at 580, 116 S.Ct. at 1601. In other words, there must be a "reasonable relationship" between punitive and compensatory damages. Id. In the BMW case, the Supreme Court was troubled by the 500 to 1 punitive to compensatory damages ratio presented in that case. However, the Court also cautioned against "draw[ing] a mathematical bright line" that would fit every case, noting that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." BMW, 517 U.S. at 582-583, 116 S.Ct. at 1602.
Travelers' argument for reversal of the exemplary damage award in this case focuses primarily on this factor. Travelers avers that jury's award of $500,000.00 in exemplary damages is "enormously disproportionate" to the harm that was actually sustained by the Mosings, and "grossly excessive" when compared to prior awards of exemplary damages under La. Civil Code art. 2315.4.
An award of exemplary damages, however, should neither be viewed in the abstract nor compared with awards from other cases. Youn, 623 So.2d at 1260. The award must be viewed in its unique context, in light of the facts of the case and with reference to the actual damages awarded and the potential harm that could have resulted from the defendant's conduct. BMW, 517 U.S. at 580-583, 116 S.Ct. at 1601-1603.
In this case, the ratio of compensatory[8] to exemplary damages is 1 to 9. We see no "shocking disparity" inherent in this figure. While the actual harm suffered by Mr. Mosing resulted in only a brief hospital stay and a temporary disability that resolved itself in a relatively short period of time following the accident, the potential harm caused by Domas' wanton and reckless behavior was significant. Careening through a residential neighborhood at excessive rates of speed to flee a prior drunken hit and run, Domas displayed a callous disregard for those who might be so unfortunate as to cross his path. That Mr. Mosing was alone in his vehicle and there was no passenger in the section of the car that sustained the most severe damage was fortunate, but it does not detract from the real and substantial danger Domas' outrageous conduct posed.
*982 Given Domas' proclivity to drive while under the influence of alcohol and the ineffectiveness of previously imposed criminal sanctions to deter his irresponsible behavior, the jury's award of $500,000.00 appears reasonably calculated to punish this defendant and deter such similar recidivist conduct in the future.[9] The award is not so disproportionate to the actual and potential harm as to manifest plainly passion and prejudice on the part of the jury.
Finally, comparing the exemplary damage award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness. BMW, 517 U.S. at 585, 116 S.Ct. at 1603. At the time of this offense, operating a motor vehicle while intoxicated, third offense, was a crime punishable by imprisonment with or without hard labor for not less than one year nor more than five years, and a fine of not more than $2,000.00. At least six months of the sentence of imprisonment was required to be imposed without benefit of probation, parole, or suspension of sentence. See LSA-R.S. 14:98. While the possible criminal monetary penalty is significantly less than the exemplary damage award in this case, the fact that the offense carries a term of imprisonment makes the difference in monetary penalties less relevant. Moreover, the jury reasonably could have decided, without committing an abuse of discretion, that Domas' recidivism in the face of these serious criminal penalties merited a higher than normal exemplary damage award.[10]
Considering the above factors with a view to the great deference to be accorded to the trier of fact, we conclude that the award of exemplary damages under the facts of this case does not constitute an abuse of the jury's much discretion. Domas' past history of drinking and driving, his persistence in this irresponsible and unlawful conduct in the face of past convictions for the offense, his apparent lack of remorse he chose not to appear at the trial of this matter[11]), and his complete disregard for the victims of his reckless conduct justify the jury's determination that an award of $500,000.00 is appropriate to punish this defendant and deter him, and others, from similar misconduct.
Our decision today should not be construed as a broad grant of authority to impose large exemplary damage awards against individuals who drink and drive, nor should this award be considered guiding precedent in cases involving other punitive damage statutes. In another case, with a different set of facts, another trial court or jury may decide not to impose such a large award. However, in this particular case, given this defendant's recidivism and grossly reckless and wanton behavior bordering on being intentional, we *983 cannot say that the $500,000.00 exemplary damage award is so clearly against the evidence before the jury as to constitute an abuse of discretion.

CONCLUSION
For the foregoing reasons, we affirm the decision of the Third Circuit Court of Appeal.
AFFIRMED.
VICTORY, J., dissents and assigns reasons.
TRAYLOR, J., dissents for the reasons assigned by Victory, J.
VICTORY, J., dissenting.
I dissent from the majority's adoption of the abuse of discretion standard of appellate review in evaluating the amount of punitive damages awarded by a trial court. For the same reasons that the United States Supreme Court decided that punitive damages challenged as being excessive under the Due Process Clause of the Fourteenth Amendment to the United States Constitution must be reviewed de novo, Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), I believe that de novo review should apply to all determinations of whether a punitive damage award is excessive, whether the award is challenged on federal due process grounds or any other state law grounds. See Campbell v. State Farm Mut. Auto. Ins. Co., 432 Utah Adv. Rep. 44, ___ So.2d ___, 2001 WL 1246676 (Utah 2001), cert. granted, ___ U.S. ___, 122 S.Ct. 2326, 153 L.Ed.2d 158 (2002) (applying Cooper's de novo standard of review to all claims of excessive punitive damages).
In Cooper Industries, the Court recognized that "unlike the measure of actual damages suffered, which presents a question of historical or predictive fact, the level of punitive damages is not really a `fact' `tried' by the jury." 532 U.S. at 437, 121 S.Ct. 1678 (cites omitted). The Court recognized that, in evaluating the factors set out in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), "only with respect to the first Gore inquiry do the district courts have a somewhat superior vantage over courts of appeals, and even then the advantage exists primarily with respect to issues turning on witness credibility and demeanor." Id., 532 U.S. at 440, 121 S.Ct. 1678. The Court further reasoned that trial courts and appellate courts were equally capable of analyzing the second factor, and that the third Gore criterion "seems more suited to the expertise of appellate courts." Id.
Unlike other states, the Louisiana Legislature has not enacted a statute which places limits on the permissive size of punitive damages in a case such as this. La. C.C. art. 2315.4. Had it done so, and the jury made an award within those limits, then the standard of review would be the abuse of discretion standard. 532 U.S. at 434, 121 S.Ct. 1678. Because a punitive damage award under La. C.C. art. 2315.4 is not governed by such a cap, and is therefore to be reviewed for excessiveness under the standards enunciated by the Supreme Court in Gore, I believe that the proper standard of review is de novo.
In this case, under the Gore standards and using a de novo standard of review, because of the nearly 14-1 ratio between the punitive and compensatory damages awarded to the Mosings, I believe the award is excessive.
For all of the above reasons, I respectfully dissent.
NOTES
[1] Travelers Casualty and Insurance Company is the successor in interest to Aetna. Hereinafter, the companies will be referred to as Travelers.
[2] Several exceptions to this general rule have been recognized: (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record. State v. Wright, 305 So.2d 406, 409 (La.1974), Summers, J., dissenting.
[3] An exception to this general rule exists when the issue can only be argued for the first time on appeal, such as, for example, where the law has changed after the trial court's decision and the new law can be applied retroactively. Segura v. Frank, 630 So.2d at 725.
[4] Pursuant to LSA-C.C. art. 2133(B): "A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs." This court has recognized that the foregoing provision was designed to do away with useless protective appeals. Davis v. Borskey, 94-2399 (La.9/5/95), 660 So.2d 17 n. 6.
[5] The long-standing requirement in our courts is that the constitutional issue must be specially pleaded and the grounds for the claim particularized. Vallo v. Gayle Oil Co., Inc., 646 So.2d at 864-865; Johnson v. Welsh, 334 So.2d 395, 396-397 (La.1976).
[6] It is well-settled that a party may not seek to change the judgment below or any part thereof unless he has appealed or petitioned for review. Matthews v. Consolidated Companies, Inc., 95-1925 (La.12/8/95), 664 So.2d 1191, 1192; Roger v. Estate of Moulton, 513 So.2d 1126, 1135 (La.1987).
[7] A similar conclusion is dictated with respect to Travelers' argument that the lower courts erred in awarding interest on the exemplary damage award from date of judicial demand. This alleged error was waived by Travelers' failure to preserve it in the court below.
[8] Compensatory damages include both general and special damages.
[9] We recognize that it is the insurer, Travelers, and not the tortfeasor, Domas, who will satisfy the exemplary damage award in the first instance. However, Travelers will be able to pursue a subrogation claim against Domas, ensuring that the loss in this case will fall on the shoulders of the actual wrongdoer. See, Sharp v. Daigre, 555 So.2d 1361, 1363 (La.1990). The award of exemplary damages is nondischargeable in bankruptcy. See, In re McNallen, 62 F.3d 619 (4th Cir.1995).
[10] Although Domas pled guilty to third offense DWI, he theoretically could have been charged as a fourth offender, which would have subjected him at the time of the conviction to imprisonment at hard labor for not less than ten nor more than thirty years. See LSA-R.S. 14:98(E).
[11] His failure to appear at trial thwarted the efforts of the plaintiffs to present evidence of Domas' wealth. However, as we have noted above, it is the defendant's burden to produce such evidence if he or she wishes this factor to be considered in the award of exemplary damages.