960 So.2d 75 (2007)
Floyd DEVALL, E.R. Noland, Richard W. Leteff, Richard C. Thevent and Grant Mealie
v.
Russell M. STARNS, Individually, and in his Capacity as Statutory Designated Chairperson.
No. 2006 CA 2155.
Court of Appeal of Louisiana, First Circuit.
March 21, 2007.
Rehearing Denied May 7, 2007.
*76 Robert L. Raborn, Yigal Bander, Baton Rouge, Counsel for Plaintiffs/Appellees Floyd Devall, Richard C. Thevenet, and Grant Mealie.
Sheri M. Morris, Baton Rouge, Counsel for Defendant/Appellant Russell M. Starns, in his Capacity as Statutory Designated Chairperson.
Tina Vicari Grant, Baton Rouge, Counsel for Attorney General State of Louisiana.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
DOWNING, J.
In this lawsuit contesting the incorporation of the City of Central in East Baton Rouge Parish, a trial court ruled that a judgment rendered prior to the incorporation, declaring a provision barring the incorporation of additional cities in East Baton Rouge Parish to be unconstitutional and contrary to state law, was null and void for defects in substance and form. The trial court did not rule whether the nullity of the earlier judgment invalidated the incorporation, and did not rule on two of the bases upon which the incorporation was challenged. In this appeal, the representative of the incorporators asks this court to review that trial court's nullity ruling and to declare the City of Central to be duly incorporated. Exercising our supervisory jurisdiction, we hold that the purported defects in the judgment declared to be null did not render the incorporation invalid, find that plaintiffs failed to sustain their burden of proving that the incorporation procedural statutes were unconstitutional or that the persons living outside of the area of incorporation were deprived of their right to equal protection or their right to vote, and uphold the validity of the incorporation of the City of Central.

FACTUAL AND PROCEDURAL BACKGROUND
On October 18, 2002, Russell Starns and Mack White, Jr., residents of East Baton Rouge Parish residing in an unincorporated *77 area of the parish, filed a petition for a declaratory judgment in the 19th Judicial District Court against the Metropolitan Council for the Parish of East Baton Rouge and the City of Baton Rouge (City/Parish). Therein, they sought a declaratory judgment decreeing that Section 1.05 of the Plan of Government of the Parish of East Baton Rouge and the City of Baton Rouge (Plan of Government), which became effective in 1949, was unconstitutional and contrary to state law. Section 1.05 of the Plan of Government provided that "[n]o additional city, town or village shall be incorporated in East Baton Rouge Parish." The plaintiffs in the nullity action urged that this provision was contrary to Article VI, Section 2 of the Louisiana Constitution of 1974, which authorized the legislature to provide by general law for the incorporation of municipalities, and La. R.S. 33:1 et seq., enacted by the legislature in 1984 to establish procedures for the incorporation of municipalities. Specifically, they argued that the Section 1.05 ban on the incorporation of cities in East Baton Rouge Parish violated La. R.S. 33:1, which permitted the incorporation of any unincorporated area with a population of more than two hundred, provided certain procedural requisites were met.
In the 2002 lawsuit, the plaintiffs served the Council Administrator for the Metropolitan Council of the City/Parish. The attorney general was not served with a copy of the lawsuit and did not participate therein. The City/Parish answered the lawsuit and admitted that Section 1.05 of the Plan of Government was unconstitutional and violative of state law. On November 14, 2002, the trial court rendered judgment decreeing Section 1.05 of the Plan of Government to be unconstitutional and contrary to state law, and therefore, null and void. Starns v. Metropolitan Council of the Parish of East Baton Rouge and the City of Baton Rouge, Docket No. 500,675 (19th JDC 10/18/2002) (hereafter referred to as "Starns I").
Thereafter, in November of 2004, citizens residing in the Central area filed their first petition for incorporation. According to the allegations of the petition, the Attorney General issued an opinion advising Governor Kathleen Babineaux Blanco that the petition did not meet the requirements of La. R.S. 33:1. After the governor refused to call an election, Mr. Starns, as the representative for the proponents of the incorporation, filed a suit for mandamus in the 19th Judicial District Court seeking a judgment ordering the governor to hold an election. On December 8, 2004, the trial court ordered the governor to call an election on the issue of incorporation of the City of Central to be conducted on April 2, 2005. The ruling was appealed to this court.[1]
While the appeal was pending, a second incorporation petition was filed with the Secretary of State by Mr. Starns, together with a Certificate of the Registrar of Voters who certified that the total number of voters in the proposed area of incorporation was 18,257, and the petition contained 4,888 signatures of qualified voters. The petition for the incorporation of Central includes a legal description of the area proposed for incorporation, states that there are approximately 26,000 inhabitants residing in the area proposed for incorporation, sets forth the assessed value of real property in the area, and identifies the services to be provided by the municipality. A special election on the issue of incorporation of the City of Central was held on April 23, 2005, with 8,190 votes cast therein. The incorporation was approved *78 by 62.59% of the voters. The election results were published in the Baton Rouge Morning Advocate on May 3, 2005.
On May 31, 2005, Floyd Devall, E.R. Noland,[2] Richard W. Leteff and Richard Thevenet, registered voters living within the geographical boundaries of the proposed city of Central, along with Grant Mealie, a black resident of East Baton Rouge Parish living outside but adjacent to the geographical limits of the City of Central, filed this lawsuit contesting the validity of the incorporation. Plaintiffs asserted three bases for attacking the incorporation.
In the first series of challenges, plaintiffs claimed that the incorporation election was unauthorized under the law because the November 14, 2002 judgment in Starns I, which declared Section 1.05 of the Plan of Government unconstitutional and contrary to state law, was an absolute or relative nullity. They insisted that the 2002 judgment was the authority by which the people voted on the proposal to incorporate the City of Central, and urged that nullification of the judgment operated to completely nullify the April 23, 2005 election. Specifically, plaintiffs urged that the judgment contained a defect in form rendering it an absolute nullity under La. Code Civ. P. art.2002 because the Attorney General was not served with the petition and did not participate in the proceeding. Alternatively, they submitted that the judgment was obtained by "fraud or ill practices" and null for a defect of substance under La.Code Civ. P. art.2004. In support of this claim, plaintiffs posited that the character of the suit was "friendly," as both sides were in "complete agreement" regarding the constitutional issue, and complained that the constitutional issue was decided without placing the case on the docket, a contradictory hearing, written briefs, an attempt by the trial judge to construe Section 1.05 so as to preserve its constitutionality, or written reasons.
In their second set of challenges, plaintiffs sought to have the court declare La. R.S. 33:1 through R.S. 33:7, which set forth the procedures for the incorporation of municipalities in an unincorporated area of the state, facially unconstitutional, asserting that the provisions constituted an unlawful delegation of legislative power-making authority to certain citizens and voters in violation of Article III, Section 1 of the 1974 Constitution. They complained that the statutes lacked restraints or guidelines to determine where, when, and how an area is to be incorporated, who will be included in the area, and who will make those decisions. Alternatively, they asserted, the provisions of La. R.S. 33:1-7 are unconstitutional as applied to the facts of the case because those statutes were used to facilitate racial discrimination and to patently deprive blacks of their right of equal protection, due process, and the right to vote because of their race. Citing voting statistics on voter composition inside and outside the area for proposed incorporation, plaintiffs urged that the proposed area of incorporation was intentionally drawn to systematically exclude blacks from inclusion in the proposed city and to deny them the right to vote on the incorporation issue.
In the third series of challenges, plaintiffs insisted that the incorporators failed to comply with the procedural steps set forth in La. R.S. 33:1-4 to call and hold an incorporation election. They urged, among other things, that the legal description of the area to be incorporated is fatally defective, and that the signatures of the voters who signed the petition for incorporation were not properly certified.
*79 Following the filing of the lawsuit challenging the incorporation, on July 11, 2005, Governor Blanco appointed a mayor, chief of police, and city council members pending the holding of elections in the City of Central. Also on that date, an "Intergovernmental Agreement" was entered into by the City/Parish, the Planning Commission for the City of Baton Rouge, the Parish of East Baton Rouge, the Central Transition District, and the City of Central, to provide for the continuation of public services to all citizens in the incorporated area of Central and those living outside the incorporated area. In April of 2006, voters in the City of Central elected a mayor, chief of police, and city council members.
Prior to the trial, Mr. Starns filed numerous exceptions raising objections of insufficiency of service, no cause of action, no right of action, and nonconformity of the petition with La. C.C.P. art. 891. He also filed a motion for summary judgment, urging that plaintiffs could not prevail in a nullity action as a matter of law because the action was untimely, plaintiffs failed to allege facts constituting fraud or ill practices, and there was no legal requirement that the Attorney General be served with the petition. Additionally, Mr. Starns contended that there was no evidence to support plaintiffs' claim that black persons were denied their right of equal protection or that the boundaries of the area were gerrymandered to exclude blacks. In support of the argument that plaintiffs failed to demonstrate racial discrimination, Mr. Starns relied on the deposition testimony of plaintiffs in which they acknowledged they had no knowledge of how the boundaries of the area to be incorporated were drawn. Specifically, he pointed to the deposition testimony of plaintiff Floyd Devall, who, in response to a question regarding what knowledge he had concerning an intent to discriminate against black individuals, responded that he did not know and that his lawyer could answer the question. Plaintiff Richard Thevenet said that he would defer the question to his attorney when asked as to the type of information he had that led him to believe that the boundaries were drawn to exclude black citizens. Lastly, plaintiff Grant Mealie attested that he did not know whether race was a factor in drawing the boundaries. Mr. Starns urged that because there was no evidence to demonstrate that the area proposed for incorporation was gerrymandered or that race was a factor in drawing the boundaries, plaintiffs had no legal basis upon which to have the incorporation statutes declared unconstitutional. Lastly, Mr. Starns asserted that plaintiffs had no evidence to support the allegations concerning the legal description of the area to be incorporated, the handling of the petition by the registrar of voters, and the ability of Central to provide services.
The Attorney General filed a memorandum in support of Mr. Starns' motion for summary judgment, urging that the failure to give him notice in the Starns I litigation did not render that judgment a nullity because he was not an indispensable party to that litigation.[3] The Attorney General also filed a trial memorandum urging that the 2002 judgment was not an absolute nullity, and further asserted that plaintiffs offered no evidence to prove that the provisions *80 of La. R.S. 33:1-7 are unconstitutional.
In a series of preliminary rulings, the trial court granted the exception of insufficiency of service as to Mr. Starns individually, but overruled the exception as to Mr. Starns in his capacity as the designated chairperson for the incorporation. The trial court also overruled the exception of no cause of action regarding the claim of unconstitutionality of La. R.S. 33:1. Additionally, the court denied the motion for summary judgment, ruling that whether or not the voting district was drawn in such a manner as to exclude minority voting, or whether or not there was collusion in the underlying lawsuit were genuine issues of material fact precluding summary judgment.
On April 10, 2006, the first day of the trial challenging the incorporation of Central was held, during which plaintiffs presented their case-in-chief, consisting of documentary evidence and the testimony of four witnesses. All three plaintiff witnesses testified that they did not have knowledge of the 2002 judgment until May 24, 2005, one week before the petition was filed, when their attorney furnished this information. The first witness, Mr. Floyd Devall, an 81-year-old who lived in the area of incorporation, voted in the April 23, 2005 incorporation election. He described the area historically considered to be the Central community and identified areas in the proposed area of incorporation that are not of that community. In connection with Mr. Devall's testimony, his affidavit, prepared in opposition to the motion for summary judgment filed by Mr. Starns on the voting rights issue, was introduced. In the affidavit, Mr. Devall set forth voter compositions inside and outside the areas of incorporation. Mr. Devall admitted that he arrived at the figures in the affidavit after discussions with his attorney, who showed him a document tabulating all of the registered voters in the Parish of East Baton Rouge. In the affidavit, Mr. Devall attested that eleven precincts bordering on the proposed City of Central had a ratio of 74.9% black voters to 22.1% white voters, while the voter composition within the 21 voting precincts of the proposed city was 95.7% white and 4.3% black. On cross-examination, Mr. Devall admitted that he had no knowledge of how the boundaries were selected for the area of incorporation.
Plaintiffs' second witness, Mr. Richard Thevenet, a resident of the proposed area of incorporation, voted in the April 23, 2005 incorporation election and also prepared an affidavit similar to that of Mr. Devall. In his affidavit, offered in connection with Mr. Thevenet's testimony, statistics on the racial composition of voter precincts in and around the Central area appear. Mr. Thevenet acknowledged that the figures were extracted from a data sheet admitted into evidence as Plaintiffs' Exhibit 5. Plaintiffs' Exhibit 5 is a listing of registered voters in East Baton Rouge Parish as of May 6, 2005, which lists precincts by number and does not identify any of the precincts by name or location.
Plaintiffs' third witness, Mr. Grant Mealie, a black resident of East Baton Rouge Parish, lives outside the proposed area of incorporation in Monticello Subdivision, which is heavily populated by black voters. Mr. Mealie also signed an affidavit in which he listed voter composition data identical to that contained in the affidavits of Mr. Devall and Mr. Thevenet. Mr. Mealie stated that he felt the incorporation would have an adverse effect on the value of his property and on other services he normally received in the area such as electricity, water and garbage pickup. When questioned by the court as to his basis for *81 making this statement, Mr. Mealie said that it was "just normal." He further acknowledged that there were no specific services he received prior to the incorporation election that he no longer receives. Mr. Mealie expressed his desire to have a vote on the incorporation decision.
The last witness called by the plaintiffs was Mr. Starns. Mr. Starns testified briefly regarding the legal description of the area to be incorporated contained in the petition for incorporation, as well as the present day operation of the City of Central. Mr. Starns attested that prior to drawing the boundaries, the incorporators obtained input from minorities, who chose not to be included in the city limits. He also testified that city officials had been elected, and that the City of Central was conducting business as usual, including holding council meetings and ruling on zoning matters.
Thereafter, plaintiffs rested. The defense filed a motion for an involuntary dismissal, asserting that plaintiffs failed to prove any of the allegations of the petition, including (1) the invalidity of the 2002 judgment; (2) that anyone living outside the incorporation had been denied services as a result of the incorporation; or (3) that there was any violation of the laws setting forth the requirements for incorporation. The trial judge granted the motion in part, finding that plaintiffs did not prove the claim against Mr. Starns individually, failed to prove claims for mental and economic damages, and also failed to prove that the City of Central would not be able to provide the proposed public services within a reasonable time. The court noted that it did not allow evidence with respect to the claims alleging violation of the Rules of Professional Conduct. The trial court denied the motion with respect to the issue of the nullity of the 2002 judgment and the claims relating to the denial of the right to vote.
The defense offered the testimony of Nancy Underwood, an assistant director of elections in the Secretary of State's Office, who identified the documents submitted to her office in connection with the petition for incorporation and the incorporation election, including proof of publication of the election results. The defense also offered the testimony of Mr. Starns, who testified regarding the legal description of the area to be incorporated in the two petitions that had been circulated to the citizens, as well as the manner in which the City of Central was carrying out its duties of providing basic services to its citizens. Mr. Starns explained that following the incorporation election, the legislature created the Central Transition District, which allowed the city to receive funds until it could hold an election to transfer taxes to the area. He testified that services were provided to the residents of Central by the City/Parish through the intergovernmental agreement, pursuant to which the City/Parish was paid ninety percent of the two percent sales tax paid in the City of Central to provide uninterrupted public services.
Following the conclusion of the trial, the court entered judgment nullifying the 2002 judgment in Starns I upon finding that it was a "friendly," if not collusive proceeding, that was imbued with vices of form and substance. Specifically, the court found that because the constitutionality of a local law was at issue, the State of Louisiana should have been named a party defendant, and the Louisiana Attorney General should have been served with process or provided with notice. The court further noted that the matter was not even placed on the docket for a hearing or trial, but rather, was entered upon a stipulation of unconstitutionality between the plaintiffs' *82 attorney and the assistant parish attorney. Although the trial court found the 2002 judgment to be null, it did not rule that the nullity invalidated the incorporation election. Instead, the court pretermitted ruling on the action to declare La. R.S. 33:1-7 unconstitutional, as well as the procedural challenges to the validity of the corporation. The nullity judgment was designated as a final one by the trial court.
Mr. Starns filed an application for a supervisory writ to this court. The writ application was denied, and this court ordered the trial court to grant Mr. Starns an appeal. Devall v. Starns, XXXX-XXXX (La.App. 1st Cir.10/2/06). The appeal was granted and plaintiffs answered the appeal, requesting that this court: (1) amend the judgment to add certain language thereto, including a declaration that Section 1.05 of the Plan of Government is valid and enforceable; (2) award damages for frivolous appeal and attorney fees; (3) find that Mr. Starns and others acting with him are in contempt of court by continuing to act as a legally incorporated municipality while the matter was pending in the trial and appellate courts; (4) find that the exception of insufficiency of service sustained by the trial court as to Mr. Starns in his individual capacity was granted in error by the trial court; and (5) notify all appropriate state and federal governmental and law enforcement agencies of the actions of defendant and those acting in concert with him in establishing and operating a "phantom non-existent" city in the Central community.[4]

DISCUSSION
In three assignments of error, Mr. Starns attacks the trial court's ruling that the 2002 judgment was a nullity. He complains that the action to nullify the judgment was untimely and thus perempted, that service upon the Louisiana Attorney General was not necessary for the judgment to be valid, and that there is no evidence that the judgment was obtained by fraud or ill practices. Furthermore, he submits, even if the 2002 judgment was properly declared a nullity, the judgment's nullity cannot serve as a basis to invalidate the incorporation of the City of Central because Section 1.05 of the Plan of Government is clearly unconstitutional and unenforceable. We agree that even if the 2002 judgment is null, that nullity did not have the effect of invalidating the incorporation election, and pretermit discussion on the issue of whether the trial court correctly found the 2002 judgment to be null and void.
Section 1.05 of the Plan of Government, which went into effect in 1949, provides as follows with respect to incorporated towns and villages:
The incorporated town of Zachary and the village of Baker shall be parts of the rural area as defined in section 1.08 and shall continue in existence as municipalities subject, except as specifically provided in this plan of government, to the general laws of the state relating to incorporated towns and villages respectively, and may enlarge their boundaries as provided in such laws. No additional city, town or village shall be incorporated in East Baton Rouge Parish.
The Louisiana Constitution of 1974 allowed local governments that had adopted a plan of government to retain those powers, functions and duties in effect when the constitution was adopted "except as inconsistent" with the constitution. Article VI, Section 2 of the 1974 Constitution gave the legislature the power to provide by general law for the incorporation of municipalities. *83 Article VI, Section 8 of the 1974 Constitution mandates that "[n]o parish plan of government . . . shall prohibit the incorporation of a city, town, or village as provided by general law."
In 1984, the legislature provided for general laws setting forth procedures by which the residents of any unincorporated area with a population in excess of two hundred inhabitants could incorporate the area. La. R.S. 33:1-2. Under La. R.S. 33:3, upon finding that there was compliance with La. R.S. 33:1-2, the governor is required to call a special election for the purpose of determining whether the unincorporated area shall become a municipality. La. R.S. 33:7(A) makes it clear that the provisions of La. R.S. 33:1-6 shall apply to every municipality incorporated on or after September 1, 1984.
Considering the above provisions, it is evident that after 1984, Section 1.05 of the Plan of Government prohibiting the incorporation of any additional city or town in the Parish of East Baton Rouge was superceded by the general law enacted by the legislature in Title 33 authorizing the incorporation of an area in excess of two hundred inhabitants. Moreover, Section 1.05 violated the constitutional ban on any provision of a parish plan of government prohibiting the incorporation of a city or town as provided by the general law. Thus, as of 1984, Section 1.05 was no longer a viable and enforceable provision.
Therefore, even if the effect of the 2006 judgment nullifying the Starns I judgment was to put Section 1.05 "back on the books," the provision simply was not a viable and enforceable one. Because Section 1.05 was not enforceable at the time of the incorporation election in 2005, plaintiffs may not rely on that provision as a basis to invalidate the incorporation election.
Although the trial court did not rule on the merits of the remaining challenges, because the record in this matter is complete, and because the issues raised therein merely involve the question of whether plaintiffs sustained their burden of proof, we shall address those claims in this appeal.
After reviewing the record in its entirety, we find that plaintiffs failed to prove that any of the provisions of La. R.S. 33:1-7, which provide a procedure for incorporating areas with two hundred or more residents to petition the governor to hold an election on the incorporation issue, are facially unconstitutional. Nor have plaintiffs demonstrated how those provisions are unconstitutional as applied. Plaintiffs failed to offer competent evidence in support of their claim that the boundaries of Central were purposefully drawn in a racially discriminatory fashion or were chosen to deprive black citizens in the area of their right to vote.
Pursuant to La. R.S. 33:4(D), in a legal action contesting an incorporation, a court must determine: (1) whether there has been full compliance with the incorporation procedural provisions; (2) whether the municipality can in all probability provide the proposed public services within a reasonable period of time; and (3) whether the incorporation is reasonable. If it is determined that the statutory requirements for incorporation have been met, including the accuracy of the statements in the petition and of the certification of the registrar of voters, that the municipality has the capacity to provide the proposed public services, and the incorporation is reasonable, a court is required to enter an order declaring the date the municipality shall become incorporated. La. R.S. 33:4(D) and (E).
Plaintiffs failed to establish that the petition was fatally defective, or that there was a deficiency in the certification of the registrar of voters. Instead, Mr. Starns offered evidence showing that the preliminary requirements for incorporation were *84 in fact met. Additionally, Mr. Starns offered evidence demonstrating that public services are being provided to the citizens of Central, and nothing in the evidence indicated that such services would not be provided in the future. Moreover, there was no evidence suggesting that the incorporation would have any adverse effects on other municipalities in the vicinity, nor was there any evidence demonstrating that the incorporation of Central was unreasonable.
For these reasons, we find that plaintiffs failed to sustain their burden of proving any of the grounds upon which the validity of the incorporation of the City of Central was challenged. In accordance with La. R.S. 33:4(E)(1), we enter judgment declaring the City of Central to be incorporated as of July 11, 2005, and having those boundaries as set forth in the legal description of the area to be incorporated in the petition for incorporation. In light of this ruling, all requests for relief raised in plaintiffs' answer to this appeal are denied as moot. Trial court costs and costs of this appeal are assessed to plaintiffs/appellees.
JUDGMENT RENDERED DECLARING THE CITY OF CENTRAL INCORPORATED AS OF JULY 11, 2005.
NOTES
[1] This appeal was dismissed upon motion of the governor on May 22, 2006.
[2] Mr. Noland subsequently withdrew from the litigation.
[3] The attorney general's suggestion that his office was not entitled to notice of the Starns I litigation because it did not involve a constitutional challenge to a "statute, ordinance or franchise" for the purpose of Article 1880 of the Code of Civil Procedure appears contrary to State v. Saizan, 96-1340 (La.4/8/97), 692 So.2d 1045, wherein the supreme court notified the attorney general of a lawsuit in which a provision of the City/Parish's Plan of Government was declared unconstitutional by a trial court.
[4] On December 11, 2006, this court granted Mr. Starns' motion for an expedited appeal. Devall v. Starns, 2006-2155 (La.App. 1 Cir. 12/11/06).