# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2022 CA 1203

## MAYOR-PRESIDENT SHARON WESTON BROOME, LEWIS O. UNGLESBY, LAMONT COLE, AND M. E. CORMIER

### VERSUS

## CHRIS RIALS AND NORMAN BROWNING, ORGANIZERS OF THE PETITION TO INCORPORATE ST. GEORGE

*Judgment Rendered:* **JUL 1 4 2023**

* * * * * * * *

**Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C690041**

**The Honorable Martin E. Coady, pro tem, Judge Presiding**

* * * * * * * *

| | |
|---|---|
| Mary O. Pierson<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellees<br>Mayor-President Sharon Weston<br>Broome and LaMont Cole |
| Brett Furr<br>John P. Murrill<br>Baton Rouge, Louisiana | |
| Larry A. Bankston<br>Baton Rouge, Louisiana | |
| Sherri Morris<br>Christina B. Peck<br>Evan P. Fontenot<br>D. Stephen Brouillette, Jr.<br>Baton Rouge, Louisiana | Counsel for Defendants/1st Appellants<br>Chris Rials and Norman Browning |
| James L. Bradford, III<br>Covington, Louisiana | |
| Mark D. Plaisance<br>Marcus J. Plaisance<br>Prairieville, Louisiana | Counsel for 2nd Appellant<br>Dwight Hudson, et al. |

**BEFORE: THERIOT, CHUTZ, AND MILLER, JJ.**

Chutz, J. concurs with reasons by Miller.

**THERIOT, J.**

Chris Rials and Norman Browning ("Incorporators"), along with Dwight Hudson and various electors from the proposed area to be incorporated as the City of St. George ("Electors"), appeal from a judgment of the trial court denying the incorporation of the City of St. George after a full trial on the merits. On appeal, Incorporators asserted exceptions of no right of action and no cause of action. Also, on appeal, Electors asserted an exception of no cause of action. For the following reasons, we sustain in part and overrule in part Incorporators' exception of no right of action and dismiss plaintiff-appellee Mayor-President Sharon Weston-Broome from the suit with prejudice, overrule Incorporators' exception of no cause of action as untimely, and dismiss Electors' exception of no cause of action. Additionally, we affirm the judgment of the trial court denying the incorporation.

## FACTS AND PROCEDURAL HISTORY

The incorporation effort at issue began in 2014 when organizers sought to incorporate an area in the southeast portion of East Baton Rouge Parish ("EBRP"), which was proposed to be the City of St. George. The organizers circulated a petition for incorporation and attempted to obtain enough signatures to call an election on the matter. This original incorporation effort was unsuccessful. The Incorporators waited the required two years to begin a second incorporation effort and filed a second notice of the petition for incorporation.[1] After collecting the requisite signatures and filing the petition with the Secretary of State, the Registrar of Voters certified that the petition contained the number of signatures required by statute, and the Governor called an election on the matter. The election was held on October 12, 2019, and the incorporation effort was approved by a majority of the electors who voted in the election.

---

[1] See La. R.S. 33:2(B).

2

On November 4, 2019, Mayor-President Sharon Weston Broome, Lewis O. Unglesby,[2] and M.E. Cormier, residents of EBRP, filed a petition pursuant to La. R.S. 33:4 to challenge the proposed incorporation of the City of St. George in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. Through their petition, plaintiffs contended that: (1) the petition for incorporation is "fatally defective" because it failed to comply with La. R.S. 33:1(A)(4), which requires that a petition for incorporation include a listing of the public services that the municipal incorporation proposes to render to the area and a plan for the provision of those services; (2) the incorporation was unreasonable because it would have an adverse impact on the City of Baton Rouge, the proposed municipality and its organizers would be unable to provide the proposed public services within a reasonable period of time, and the proposed plan fails to comply with the Louisiana Constitution, which requires a regularly paid and full-time police and fire department in cities with more than 13,000 residents, and the police and fire departments must be Civil Service classified; (3) the incorporation was unreasonable because the organizers demonstrated "a clear intent to impermissibly dilute minority voting power" in drawing the boundaries of the proposed city; and (4) the incorporation would violate Section 1.05 of the Plan of Government for the City of Baton Rouge and Parish of East Baton Rouge ("City-Parish"), which prohibits any additional cities, towns, or villages from being incorporated in EBRP. Plaintiffs alternatively sought a mandatory injunction ordering a parish-wide election to determine if Section 1.05 of the City-Parish's Plan of Government should be amended.[3] Shortly after filing the petition, plaintiffs amended their petition to add LaMont Cole, a council member for the City-Parish, as a plaintiff.

---

[2] Unglesby voluntarily withdrew as a plaintiff in this matter.
[3] Section 1.05 provides, in pertinent part, that "[n]o additional city, town or village shall be incorporated in East Baton Rouge Parish."

3

In response to the petitions, Incorporators filed exceptions of no cause of action, no right of action, and alternative exceptions of improper cumulation of actions and failure to join parties needed for just adjudication. Prior to the hearing on the exceptions, the parties stipulated that the matter was not an election challenge pursuant to La. R.S. 18:1401.[4] After the exception hearing, the trial court signed a judgment sustaining the exception of no right of action as to Cormier,[5] and overruling the exception as to Broome and Cole (collectively, "Appellees").[6] The judgment further partially sustained the exception of no cause of action due to the stipulation that the matter was not an election contest suit, and overruled the exception of improper cumulation of actions and failure to join parties needed for a just adjudication as moot.

Incorporators answered the petitions, asserting various defenses and general denials of most of plaintiffs' allegations and seeking a declaration incorporating the City of St. George in accordance with the boundaries set forth in the petition for incorporation.

Prior to trial, the trial court heard various preliminary matters, including discovery issues, motions for summary judgments, and motions in limine. Pertinent to the claims to be decided at trial, the trial court granted a motion for partial summary judgment filed by Incorporators and dismissed plaintiffs' alternative claim that a parish-wide election to amend Section 1.05 of the Plan of Government would be required before the City of St. George could be incorporated.

---

[4] Title 18 of the Louisiana Revised Statutes is known as the Louisiana Election Code and regulates the conduct of elections within the state. See La. R.S. 18:1.

[5] The exception hearing transcript is not part of the record on appeal and the trial court did not issue written reasons for judgment. However, in their exception, the Incorporators contended that Cormier had no right of action because she did not fall within the class of persons provided for in La. R.S. 33:4.

[6] This court denied Incorporators' application for supervisory writs relating to this judgment. Broome v. Rials, 2020-0387 (La. App. 1st Cir. 7/16/20), 2020 WL 4049853 (unpublished writ action).

4

Ultimately, the matter proceeded to an eight-day bench trial that commenced on May 2, 2022. At the conclusion of trial, the court took the matter under advisement. On May 31, 2022, the trial court issued extensive written reasons for judgment, finding that the incorporation was unreasonable and would adversely affect the City of Baton Rouge. The trial court originally signed a judgment in conformity with its ruling on May 31, 2022, but an amended final judgment was signed on June 13, 2022. It is from this judgment that Incorporators and Electors appeal.[7]

## EXCEPTIONS FILED ON APPEAL

On appeal, Incorporators filed an exception of no right of action, challenging Appellees' asserted rights of action pursuant to La. R.S. 33:4(A)(3). Incorporators and Electors both filed an exception of no cause of action, challenging the constitutionality of La. R.S. 33:4(A)(3), (B), (D), and (E)(2)(a) as enacted in part and amended in part by legislative Acts 1984, No. 536, § 1 ("Act 536"). Incorporators also assigned as error the trial court's interlocutory judgment that overruled the exception of no right of action filed before the trial court as to Appellees. We address each of these exceptions below.

*Incorporators' Exception of No Right of Action*

Incorporators' exception of no right of action filed before this court essentially re-urges the exception that was filed in the trial court and challenges Appellees' asserted rights of action pursuant to La. R.S. 33:4(A)(3). The objection of no right of action is a peremptory exception which tests whether the plaintiff who seeks relief is the person in whose favor the law extends a remedy. See La. C.C.P. art. 927; *Denham Homes, L.L.C. v. Teche Federal Bank*, 2014-1576 (La. App. 1st Cir. 9/18/15), 182 So. 3d 108, 120. The appellate court may consider the

---

[7] Electors appeal from the trial court's judgment pursuant to La. R.S. 33:5(B), which provides: "Any elector residing in the area proposed for incorporation or any person owning land in the area proposed for incorporation may appeal a district court order denying incorporation of the area within the time and in the manner provided by law."

5

peremptory exception filed for the first time in that court, if pleaded prior to submission of the case for a decision, and if proof of the ground of the exception appears of record. La. C.C.P. art. 2163. Moreover, a party may re-urge a peremptory exception after it has been overruled. *Louisiana State Bar Ass'n v. Carr and Assocs., Inc.*, 2008-2114 (La. App. 1st Cir. 5/8/09), 15 So. 3d 158, 164, writ denied, 2009-1627 (La. 10/30/09), 21 So. 3d 292. The party raising a peremptory exception bears the burden of proof on the exception. *Jenkins v. City of Baton Rouge*, 2014-1235 (La. App. 1st Cir. 3/9/15) 166 So. 3d 1032, 1035.

Appellees assert a right of action in this matter under La. R.S. 33:4(A)(3). Louisiana Revised Statutes 33:4(A) provides:

> Any of the following persons or governmental entities may file a petition contesting the incorporation:
>
> (1) Any elector residing in the area proposed for incorporation.
>
> (2) Any person owning land in such area.
>
> (3) Any municipality which might be adversely affected or an elected official of the governing authority of such a municipality.

Incorporators contend that Broome is not an elected official of the governing authority of the City of Baton Rouge, therefore she lacks standing under La. R.S. 33:4. Additionally, they maintain that because Cole is participating in the suit without authority of the Council, he is merely a private citizen who also lacks standing.

As it relates to Broome, Incorporators rely on La. Const. art. VI, § 44(4), which defines "governing authority" as "the body which exercises the legislative functions of the political subdivision." Additionally, Incorporators contend that the Plan of Government refers to the Mayor-President only as the Chief Executive Officer of the City-Parish, while the Council is the governing authority. In opposition, Appellees contend that La. Const. art. VI, § 44 is limited in its scope and expressly states that the definitions only apply within Article VI itself. Thus,

6

the definition of "governing authority" used in Article VI is limited only to its meaning within the Article, which is titled "Local Government." Moreover, Appellees argue that the Plan of Government inconsistently uses the terms "governing authority" and "governing body." Appellees further rely on *Hammontree v. Patterson*, 356 So. 2d 1077 (La. App. 2nd Cir. 1978) to maintain that the Mayor is part of the governing authority of a municipality. Appellees also rely on the general civil procedure article regarding standing, La. C.C.P. art. 681, which provides that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." Based on this article, Appellees argue that Broome, as the Mayor-President of an adversely affected municipality, is arguably the best-situated party to contest the proposed incorporation of the City of St. George.

As it relates to Cole, Incorporators contend that jurisprudence requires specific approval of a governing authority for any of its members to act in an official capacity. Incorporators argue that under the rules of statutory construction, use of the phrase "elected official of the governing authority" in La. R.S. 33:4(A)(3) contemplates that the official would act in an "official" capacity pursuant to authority granted by the governing authority. Incorporators further argue that allowing a single councilmember to institute litigation asserting a claim of an adverse impact to the City of Baton Rouge leads to the absurd consequence of allowing a single member to institute litigation on behalf of the municipality. Appellees argue in response that Cole is not bringing the suit in his official capacity, but as an individual elected official of the governing authority as specifically authorized by La. R.S. 33:4(A). Additionally, Appellees point out that La. R.S. 33:4 allows single electors or landowners to challenge the incorporation, so it would be no more absurd to allow one elector or landowner to challenge the

7

incorporation than it would be to individually allow Cole to challenge the incorporation.

Louisiana Revised Statutes 33:101, "Definitions," provides:

For the purpose of this Subpart, the following terms are defined as follows:

. . .

(2) With regard to municipalities, certain terms are defined as follows:

(a) "Municipality" includes any incorporated city, town, or village.

(b) "Chief executive" means the mayor or corresponding officer of a municipality, whatever his title.

(c) "Local legislative body" means the mayor and board of aldermen, the commission council, or other governing body of a municipality.

Title 33 of the Revised Statutes is titled "Municipalities and Parishes." Section 101 is part of Chapter 1, "Creation, Organization, Alteration, and Dissolution," and is contained within the same Chapter as La. R.S. 33:1-5, which are the provisions under which Appellees brought their suit to challenge the incorporation. Section 101 is further under Part IV, "Physical Development of Parishes and Municipalities," and Subpart A, "Planning Commissions."

Chapter Four of the Plan of Government is titled "Mayor President." Section 4.01 provides that the Mayor-President is the Chief Executive Officer of the Parish and the City. Section 4.03 provides, in pertinent part:

Chief Executive Officer of the Parish and City

The Mayor-President *shall be the Chief Executive Officer of the Parish and City and shall have power, as authorized by the Metropolitan Council*, subject to this Plan of Government, the ordinances and resolutions of the Metropolitan Council adopted in pursuance thereof, and the Constitution and general laws of the State, to supervise and direct the administration of all departments, offices and agencies of the Parish and City Governments the heads of which are appointed by him. He shall have all the powers and duties, not inconsistent with the provisions of this Plan of Government, conferred or imposed on the Mayor of the City of Baton Rouge by its Charter or

8

which may be conferred or imposed on the Mayors of Cities by the general laws of the State applicable to such City. [Emphasis added.]

Further, Section 4.04 of the Plan of Government provides:

Duties of the Mayor-President

It shall be the duties of the Mayor-President:

(a) To attend, either personally or by representation, meetings of the Council. The Mayor-President may present to the Council written messages or information which in his opinion are necessary and expedient and shall have the right to speak at all meetings of the Council. The Mayor-President shall have no vote on the Council, but all ordinances enacted by the Council shall be submitted to the Mayor-President as provided in Section 2.1. of the Plan of Government. (As Amended October 27, 1979) (As amended October 20, 2007)

* * *

(d) To prepare and submit to the Council not later than their first meeting in July of each year a concise and comprehensive report of the financial transactions and administrative activities of the Parish and the City and all districts of which the Metropolitan Council is the governing body, during the fiscal year ending on the preceding thirty-first day of December, in suitable form for publication, and to cause to be printed for general distribution to all citizens or request such number of copies of the same as the Council shall direct. (As amended October 20, 2007))

(e) To perform such other duties as may be prescribed by this Plan of Government or required of him by the ordinances of the Council.

Chapter Two of the Plan of Government is titled "Governing Bodies." Section 2.01(a), titled "Metropolitan Council Parish of East Baton Rouge and the City of Baton Rouge Creation and Composition[,]" provides that "the Metropolitan Council shall be the governing authority of the City of Baton Rouge and the Parish of East Baton Rouge." Section 2.04, titled "Governing Body of City," provides that "[t]he governing body of the City of Baton Rouge shall consist of the Metropolitan Council as hereinabove provided for."

While the terms "governing authority" and "governing body" are used interchangeably throughout the Plan of Government, it explicitly states that the Council is both the governing authority and the governing body of the City-Parish,

and the Mayor-President is never referred to as a member of same. Under the Plan of Government, the Metropolitan Council is the governing authority of both the City and the Parish, while the Mayor-President is the Chief Executive Officer of the City and the Parish.

Moreover, while the court in *Hammontree,* 356 So. 2d at 1079, found that the mayor was a member of the governing authority, the court explicitly discusses only those municipalities that were formed under the Lawrason Act, La. R.S. 33:321, *et seq.,* which Baton Rouge is not.[8] There, the court stated that "[t]he 'governing authority' of a Lawrason Act municipality is the mayor and board of aldermen." *Hammontree,* 356 So. 2d at 1079. We further note that *Hammontree* appears to rely on a prior version of the Lawrason Act that has since been amended because the court cites to La. R.S. 33:362 for a proposition that is no longer contained within that statute and further relies on statutes which were subsequently repealed. Finally, both Appellees have specifically stated that they are not acting in their official capacities through this lawsuit, and that the municipality is not asserting the right of action. Cole has also stated that he is not acting on behalf of the entire council, but solely as an elected official of the governing body of the City of Baton Rouge, as provided for in La. R.S. 33:4(A)(3). A plain reading of "an elected official of the governing authority of such a municipality [which might be adversely affected]" does not require the elected official to be acting in an official capacity or on behalf of the entire municipality. The statute's use of the disjunctive "or" sets apart two mutually exclusive alternatives, meaning the suit can be brought *either* by "[a]ny municipality which might be adversely affected" *or* "an elected official of the governing authority of such a municipality." See La.

---

[8] Pursuant to La. R.S. 33:321, titled "Municipalities government by mayor-board of aldermen form of government[,]" the Lawrason Act applies to all municipalities except those municipalities governed by a special legislative charter or by a home rule charter or plan of government adopted pursuant to Article VI of the Constitution of Louisiana. See La. R.S. 33:321, Reporter's Notes – 1950. The City-Parish is governed by a plan of government.

10

R.S. 1:9 and *Succession of Harlan*, 2017-1132 (La. 5/1/18), 250 So. 3d 220, 225. Thus, we find no merit to Incorporators' arguments that Cole cannot unilaterally act in his official capacity.

Based on our review of the exception, the opposition, and the applicable law, we find that Cole is clearly an elected official of the governing authority of the City of Baton Rouge, and as such, has a right of action to file a petition contesting the incorporation pursuant to La. R.S. 33:4(A)(3). However, we also find that Broome, as the Mayor-President of the City-Parish, is the Chief Executive Officer of the City-Parish and not an elected official of the governing authority, as contemplated by La. R.S. 33:4(A)(3). Accordingly, the Incorporators exception of no right of action is overruled as to Cole and sustained as to Broome. As a result, Cole is the only remaining plaintiff-appellee in this matter.[9]

*Exceptions of No Cause of Action*

In their exceptions of no cause of action, Incorporators and Electors contend that Act 536 and La. R.S. 33:4 must fail because they are legislative instruments which conflict with the Constitution. They argue that Act 536, which enacted La. R.S. 33:4(A)(3) and amended Subsections (B),(D), and (E)(2)(a), violates: (1) voting rights under La. Const. art. I, § 10, as well as the 14th Amendment to the United States Constitution; (2) the prohibition set forth in La. Const. art. III, § 12(A)(1) against local or special laws for the holding and conducting of elections; (3) the prohibition set forth in La. Const. art. VI, § 8 providing that no parish plan of government or home rule charter shall prohibit the incorporation of a city as provided by general law because it allows elected officials of a municipality to challenge an incorporation;[10] and (4) the mandate set forth in La. Const. art. XI, § 1 providing that the legislature adopt an election code which shall provide for the

---

[9] Due to this ruling, we will refer to Cole as Appellee for the remainder of this opinion.

[10] While Incorporators and Electors both rely on an excerpt of the transcript from the 1973 Constitutional Convention to explore the intent of La. Const. art. VI, § 8, evidence may not be introduced to support or controvert an exception of no cause of action. See La. C.C.P. art. 931.

11

conduct of all elections. Incorporators further contend that Act 536 violates the requirement set forth in La. Const. art. VI, § 2 that the legislature must provide by general law for the incorporation of municipalities. Finally, Incorporators allege that the standards for denying incorporation under La. R.S. 33:4(B), (D), and (E)(2)(a) are unconstitutionally vague.

Electors further contend that because Act 536 enacted a cause of action which allows an election to be voided based on grounds not provided for in the Election Code, specifically La. R.S. 18:1401(C), it is a special election law in derogation of the Constitution. Through their exception, Electors specifically aver that the portions of La. R.S. 33:4 which require the trial court to consider the possible adverse effects the incorporation may have on other municipalities in the vicinity when determining the reasonableness of the incorporation and the requirement that the district court enter an order denying the incorporation upon a finding that the incorporation is unreasonable are unconstitutional.

Conversely, Cole argues that the exceptions are not actually exceptions, but an attempt to argue substantive issues which were waived because the claims were not raised before the trial court. Cole contends that he clearly stated a cause of action under La. R.S. 33:4(D), and that in order for the Appellants to assert a claim that Subsection (D) is unconstitutional, the constitutional challenge should have been properly raised as an affirmative defense in an answer or a reconventional demand for declaratory judgment before the trial court. Cole further argues that it is well-established in Louisiana that a litigant must raise constitutional attacks in the trial court, and the constitutional challenge must be specifically pleaded and the grounds for the claim particularized. Additionally, Cole contends that Incorporators and Electors failed to appropriately notify the Attorney General in the trial court of a constitutional challenge in accordance with La. C.C.P. art. 1880; they argue that even if the constitutional challenge can appropriately be raised for

12

the first time on appeal, the Incorporators and Electors still failed to give appropriate notice to the Attorney General because they merely faxed or mailed a copy of the exceptions and/or their briefs to the Attorney General.

The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. *Calloway v. Lobrano*, 2016-1170 (La. App. 1st Cir. 4/12/17), 218 So. 3d 644, 648. For purposes of the exception, the well-pleaded facts in the petition and any documents annexed thereto must be accepted as true. *Christian Schools, Inc. v. Louisiana High School Athletic Ass'n*, 2020-0762 (La. App. 1st Cir. 5/18/22), 342 So. 3d 1068, 1074, writ denied, 2022-01015 (La. 10/12/22), 348 So. 3d 78; see La. C.C.P. arts. 927 and 931; see also La. C.C.P. art. 853 ("A copy of any written instrument that is an exhibit to a pleading is a part thereof."). The burden of demonstrating that no cause of action has been stated is on the party raising the objection. *Adams v. Owens-Corning Fiberglas Corp.*, 2004-1296 (La. App. 1st Cir. 9/23/05), 921 So. 2d 972, 975, writ denied, 2005-2501 (La. 4/17/06), 926 So. 2d 514. In ruling on an exception of no cause of action, the trial court must determine whether the law affords any relief to the claimant if he were to prove the factual allegations in the petition and annexed documents at a trial. *Id.* An exception of no cause of action is triable solely on the face of the petition and any annexed documents thereto. See La. C.C.P. art. 931; *Christian Schools, Inc.*, 342 So. 3d at 1074. The only documentary evidence that may be considered on an exception of no cause of action is that annexed to the petition, unless the evidence is admitted without objection to enlarge the petition. *Calloway*, 218 So. 3d at 648.

In reading a petition to determine whether a cause of action has been stated, it must be interpreted, if possible, to maintain the cause of action instead of dismissing the petition. Any reasonable doubt concerning the sufficiency of the

13

petition must be resolved in favor of finding that a cause of action has been stated. *Adams*, 921 So. 2d at 975-76. The petition must set forth material facts upon which the cause of action is based. La. C.C.P. art. 891(A); *Christian Schools, Inc.*, 342 So. 3d at 1074. The correctness of conclusions of law is not conceded for the purposes of a ruling on an exception of no cause of action. *CamSoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 2015-1260 (La. App. 1st Cir. 9/23/15), 182 So. 3d 1009, 1016.

The longstanding jurisprudential rule of law in Louisiana is litigants *must raise constitutional attacks in the trial court, not the appellate courts*, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized. *Unwired Telecom Corp. v. Parish of Calcasieu*, 2003-0732 (La. 1/19/05), 903 So. 2d 392, 399;[11] see also *Vallo v. Gayle Oil Co., Inc.*, 94-1238 (La. 11/30/94), 646 So. 2d 859, 864-65. This burden is composed of three tiers: (1) the plea of unconstitutionality must first be made in the trial court; (2) the plea of unconstitutionality must be specially pleaded; and (3) the grounds outlining the basis of unconstitutionality must be particularized. *Istre v. Meche*, 2000-1316 (La. 10/17/00), 770 So. 2d 776, 779. These procedural rules exist to afford interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. *Id.* In addition, this opportunity to fully brief and argue the issue provides the trial court with thoughtful and complete

---

[11] Exceptions to this rule have been recognized: (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record. *Unwired Telecom Corp.*, 903 So. 2d at 399 n. 5, citing *Mosing v. Domas*, 2002-0012 (La. 10/15/02), 830 So. 2d 967, 975 n.2.

In *Unwired Telecom Corp.*, the Louisiana Supreme Court chose to utilize its supervisory jurisdiction to examine a constitutional issue which was raised for the first time on appeal due to a new legislative enactment which occurred while the appeal was pending. On appeal, the parties briefed and argued the constitutionality of the Act, and the Third Circuit ruled on the Act's constitutionality. The Court stated that "[i]n the particularly limited setting" of that case, it was judicially economical to exercise supervisory jurisdiction. *Unwired Telecom Corp.*, 903 So. 2d at 401.

arguments relative to the issue of constitutionality and furnishes reviewing courts with an adequate record upon which to adjudge the constitutionality of the statute. *Labranche v. Landry*, 2022-0461 (La. App. 1st Cir. 12/15/22), 357 So. 3d 395, 405-06.

While it is clear, and has already been discussed, that an exception of no cause of action may be filed on appeal at any time prior to the submission of the case for decision, jurisprudence suggests that a party is still not allowed to raise a constitutional challenge for the first time on appeal. See *Causey v. Opelousas-St. Landry Securities Co.*, 188 So. 739, 742 (La. 1939), overruled on other grounds by *Coulon v. Anthony Hamlin, Inc.*, 98 So. 2d 193 (La. 1957) (Though the exception may be filed for the first time at the Supreme Court, the Code of Civil Procedure still does not authorize the filing, for the first time, in the Supreme Court, of a plea of unconstitutionality. The constitutionality of a law would not be considered where an issue to that effect has not been raised in the court below.).

Moreover, a litigant who fails to plead the unconstitutionality of a statute in the trial court cannot raise the constitutional issue in the appellate court. *Johnson v. Welsh*, 334 So. 2d 395, 396 (La. 1976). When the unconstitutionality of a statute is specifically pled, the claim must be raised in a petition (the original petition, an amended and supplemental petition or a petition in an incidental demand), an exception, a motion, or an answer. *Vallo*, 646 So. 2d at 865. Additionally, the Attorney General must be served so he can elect whether or not to exercise his statutory right to represent the state's interest in the proceedings prior to a declaration of unconstitutionality. See La. C.C.P. art 1880.[12] An opposing party must also be given sufficient time to brief and prepare arguments defending the constitutionality and a contradictory hearing must be held. *Id.* Additionally, La.

---

[12] If a statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard. La. C.C.P. art. 1880.

15

R.S. 13:4448 requires the courts of appeal and the Louisiana Supreme Court to notify the Attorney General and afford him an opportunity to be heard prior to adjudicating the constitutionality of a state statute.[13] Accordingly, we find that we cannot consider Incorporators' exception of no cause of action, as Incorporators impermissibly waited until the appeal to raise constitutional attacks on the applicable statutes.

As to Electors' exception of no cause of action, the statute that provides them the right to appeal states that "[a]ny elector residing in the area proposed for incorporation or any person owning land in the area proposed for incorporation *may appeal a district court order* denying incorporation of the area within the time and in the manner provided by law." La. R.S. 33:5(B) (Emphasis added). Moreover, the right to appeal in Louisiana is a constitutional right which should be construed liberally. See La. Const. art. I, § 22; *Amedee v. Aimbridge Hospitality LLC*, 2021-01906 (La. 10/21/22), 351 So. 3d 321, 325. The right to appeal even extends to those who are not a party to a lawsuit. La. C.C.P. art. 2086 ("A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken."). However, when a third person appeals, he must take the record as he finds it, and must show either that the judgment appealed from is erroneous or that it was the result of fraud and collusion between the original parties. La. C.C.P. art. 2086, cmt. (c); see also *Balis v. Mitchell*, 48 So. 2d 691, 695 (La. App. 1st Cir. 1950).

In the Louisiana Supreme Court case of *Mosing v. Domas*, 2002-0012 (La. 10/15/02), 830 So. 2d 967, an insurer was granted summary judgment in its favor at the trial court, and dismissed from the suit with prejudice. The matter went to trial without the insurer as a party to the suit. After trial, plaintiffs appealed the ruling; though the insurer was not required to do so in order to respond to the

---

[13] Pursuant to La. R.S. 13:4448, this court provided notice of the constitutional challenges to the Attorney General on March 21, 2023.

16

appeal, the insurer also appealed and listed various assignments of error. The judgment on appeal placed the insurer in the position of primary uninsured motorist insurer and rendered it liable for the entire amount of the judgment. The insurer applied for rehearing of the court of appeal's judgment, raising constitutional challenges for the first time. The appellate court denied rehearing, and the Supreme Court granted certiorari to consider whether an award of exemplary damages was excessive. *Id.* at 971-72. Noting the jurisdictional rules that litigants must raise constitutional attacks in the trial court and that appellate courts generally will not consider issues raised for the first time on appeal, the court ultimately concluded that the case was procedurally unique because although the insurer at issue was dismissed from the suit prior to trial, that insurer chose to participate in the appellate court proceedings. *Id.* at 976. The Court found that the constitutional issue was untimely raised in the rehearing application:

> Accordingly, while [the insurer] was not a party to the case at trial, and thus was not in a position to raise the constitutional challenge in the district court, it did appeal and in doing so, failed to assign as error the federal due process ... claim it belatedly raises in this court. We cannot consider this claim, which was waived by the failure of [the insurer] to assert it timely in the court below.

*Id.* at 977.

The use of "the court below" is clearly a reference to the appellate court, not the trial court, as the insurer was dismissed from the suit before the trial actually commenced. Thus, when a party participates in the trial court proceedings, but ultimately not the trial, and also participates in the appeal, the constitutional claims must be raised at the appellate court in order to preserve the claims. We find this case to be factually distinguishable from the matter at hand.

Here, Electors did not participate in any of the proceedings prior to this appeal, despite having a right to intervene in the trial court proceedings. See La. C.C.P. art. 1091 ("A third person having an interest therein may intervene in a

17

pending action to enforce a right related to or connected with the object of the pending action[.]"). Moreover, Electors exercised their right to appeal pursuant to La. R.S. 33:5(B), which provides only a right to appeal from a "district court order." Interpretation of any statute begins with the language of the statute itself. *Richardson v. Lott*, 2003-0189 (La. App. 1st Cir. 11/7/03), 868 So. 2d 64, 72, writ denied, 2003-3324 (La. 2/13/04), 867 So. 2d 707. When the application of the clear and unambiguous language of the statute does not lead to absurd results, the law shall be applied as written, without further interpretation in search of legislative intent. *Id.* at 72-73; see also La. C.C. art. 9. Looking to the plain language of the statute, as well as Comment (c) to La. C.C.P. art. 2086, we find that Electors' right to appeal requires them to take the record as they find it and only allows them the right to appeal the "district court order," or the judgment itself, and not to raise any other pre-trial motions or exceptions before this court. Accordingly, we will not consider Electors' exception of no cause of action, and it is dismissed.

## DISCUSSION

*Application of La. R.S. 33:4*

As previously discussed, Cole brought this matter pursuant to La. R.S. 33:4 in order to challenge the incorporation of the proposed City of St. George. In a legal action contesting an incorporation, La. R.S. 33:4(D) requires a court to determine: (1) whether there has been full compliance with the incorporation procedural provisions, including the accuracy of the statements in the petition and of the certification of the registrar of voters; (2) whether the municipality can in all probability provide the proposed public services within a reasonable period of time; and (3) whether the incorporation is reasonable. In determining whether the incorporation is reasonable, the court shall consider the possible adverse effects the incorporation may have on other municipalities in the vicinity. If the court

18

determines all of these requirements were met, it shall enter an order declaring the municipality incorporated, along with the name and boundaries of the municipality. However, if the court determines that one of these requirements has not been met, it is required to enter an order denying the incorporation. See La. R.S. 33:4(E); see also *Devall v. Starns*, 2006-2155 (La. App. 1st Cir. 3/21/07), 960 So. 2d 75, 83, writ denied, 2007-1224 (La. 6/22/07), 959 So. 2d 513.

Based on the claims raised through his petition, Cole bore the burden at trial of proving either that the petition was fatally defective, that the proposed City of St. George would be unable to provide public services within a reasonable period of time, or that the incorporation was unreasonable for any reason, including that the incorporation may adversely affect other municipalities in the vicinity. After a full trial on the merits, the trial court issued extensive reasons for judgment. In those reasons, the trial court found that: (1) Cole failed to prove that the proposed area for incorporation was intentionally drawn to exclude minorities from the proposed city; (2) the petition disclosure minimally satisfies the requirement of the statute, because the terse description did place citizens on notice of what services would be provided and what may be provided; (3) if properly funded and with cooperation from EBRP, the proposed city could "in all probability" provide some of the proposed public services within a reasonable period of time; (4) it is doubtful that certain services in the petition for incorporation could be provided without increasing taxes, and the petition conditions the provision of those services on sufficient funding; (5) the proposed city would run a deficit from day one, without even considering the additional cost of the Sheriff's services; and (6) the reduction in revenue due to the incorporation of the proposed city would clearly have a substantial adverse effect on Baton Rouge.

This case involves the application and interpretation of La. R.S. 33:1-7, the statutory provisions on municipal incorporation. Questions of law, such as the

proper interpretation of a statute, are reviewed by this Court under the *de novo* standard of review. *Woodrow Wilson Construction, LLC v. Amtek of Louisiana, Inc.*, 2017-1156, 2017-1157 (La. App. 1st Cir. 8/6/18), 256 So. 3d 305, 314. When a trial court commits an error of law, the reviewing court is not subject to the manifest error standard and can make an independent determination of the facts from the record on appeal. *In re E.W.*, 2009-1589 (La. App. 1st Cir. 5/7/10), 38 So. 3d 1033, 1038.

Upon our review of the record and the trial court's ruling, we must first determine whether the trial court correctly interpreted the applicable provisions, namely La. R.S. 33:1-4. As previously discussed, interpretation of any statute begins with the language of the statute itself. *Richardson*, 868 So. 2d at 72. When the application of the clear and unambiguous language of the statute does not lead to absurd results, the law shall be applied as written, without further interpretation in search of legislative intent. *Id.*; see also La. C.C. art. 9.

La. R.S. 33:1(A) provides that the petition for incorporation *shall* include the following information:

> (1) A legal description of the area proposed for incorporation, a map of the area proposed for incorporation, and the statement that all lands included in the area constitute a contiguous area. The description shall also include a list of every parish in which the proposed area of incorporation is wholly or partially situated.

> (2) A statement of the number of inhabitants residing in the unincorporated area of the proposed incorporation. Such statement shall be based on the latest federal decennial census or another current population report or count which is verifiable.

> (3) A statement of the assessed value of the immovable property located in the unincorporated area.

> (4) A listing of the public services the municipal corporation proposes to render to the area and a plan for the provision of these services.

> (5) A statement of the corporate name desired for the new municipality.

(6) The names of two persons, who shall be designated as chairperson and vice chairperson, for the petition for incorporation who shall serve as agents for the petitioners in all legal matters, including the receipt of notices. Notice will be sufficient if served on the chairperson or vice chairperson. If the chairperson is unable to carry out the duties required in this Section, the vice chairperson shall carry out such duties.

As to these requirements, Cole highlighted subsection (A)(4) of La. R.S. 33:1, asserting that the petition failed to contain a plan for the provision of services that the City of St. George proposed to render to the area once it became incorporated. Subsection (D) of La. R.S. 33:4 requires the trial court to determine whether there was full compliance with the provisions of La. R.S. 33:1-7. In its written reasons for judgment, the trial court found that the petition disclosure minimally satisfies the requirement of the statute and that the description placed citizens on notice of what services would be provided and what services may be provided.

While appellate courts review judgments, not reasons for judgment,[14] the sufficiency of the petition for incorporation is a preliminary matter that the trial court was required to decide prior to ruling on the reasonableness of the incorporation. See La. R.S. 33:4(D) and (E).

In the petition for incorporation, Incorporators listed five services which they propose to be rendered via the continuation of services, which are currently provided to the area through EBRP or other consolidated districts that serve the parish: (1) public safety via fire protection districts and the EBRP Sheriff's Office; (2) sanitation and garbage; (3) sewerage; (4) emergency medical services; and (5) 911 services. Incorporators then listed eight services under the heading, "[t]he City of St. George may provide the following services through contractor(s) or municipal staff:" (1) property use regulation; (2) building inspections; (3) traffic signs and signals; (4) municipal public streets and roads maintenance and

---

[14] See Beem v. Beem, 2020-0897 (La. App. 1st Cir. 4/20/21), 324 So. 3d 682, 687.

improvement; (5) right of way maintenance; (6) drainage system maintenance and improvements; (7) alcohol beverage regulation; and (8) animal control. After this list of proposed services, the Incorporators included "[a]ll services will be provided subject to the availability of funds derived from taxes, license fees, permits and other revenue which becomes available to the municipality and are authorized by state law."

At trial, Incorporators were questioned regarding the inclusion of a plan in the petition for incorporation. Both Incorporators testified that, when the petition was drafted, they were aware of the requirement that the petition contain a list of services and a plan for the services, and that they did have a business plan outline in the works while the petition was being drafted, but decided not to include it in the petition. Rials acknowledged that in his deposition, he testified that the petition merely included "a summary of the plan," and if someone wanted to see the full plan they would either have to go to the St. George website or the library, though he and Browning elected not to include that information on the petition. Conversely, Browning testified that he believes what was included on the petition is a plan for the provision of services. Browning also testified that "on the petition, we have those services that we plan to offer" and "how they would be executed through consolidated government." Additionally, he averred that the "services that St. George will provide will be executed through... a public private partnership" but that this information is stated on their website, not the petition.

We find the trial court's ruling that the petition minimally meets the requirements of La. R.S. 33:1(A)(4) was legal error. Though the trial court stated that the "terse description... place[d] citizens on notice of what services would be provided and what services may be provided," the plain language of the statute requires more than notice of what services would be provided and what services may be provided. Because this finding was legal error and because the

interpretation of a statute is a question of law, we will now review the sufficiency of the petition under a *de novo* standard of review.[15]  See *Woodrow Wilson Construction, LLC*, 256 So. 3d at 314 and *In re E.W.*, 38 So. 3d at 1038.

Mindful that there is minimal guidance on the interpretation of these statutes and their application under this specific set of facts, we look to the general rules of statutory construction. According to those rules, unless the context clearly indicates otherwise, the word "and" indicates the conjunctive. La. C.C.P. art. 5056. When the context of the statutory provision does not clearly indicate otherwise, we are required to ascribe a conjunctive meaning to the word "and." *Smith v. Our Lady of the Lake Hosp., Inc.*, 624 So. 2d 1239, 1249 (La. App. 1st Cir. 1993). The statute explicitly states that the petition must contain a listing of services *and* a plan for those services. The plain language of the statute, including the use of the conjunctive "and," clearly contemplates something more than a mere listing of services. Therefore, it follows that from the plain wording of La. R.S. 33:1(A)(4), the requirement that the petition for incorporation contains a listing of public services is distinct from the requirement that it contains a plan for the provision of the listed services.

Moreover, as the fundamental question in all cases of statutory interpretation is legislative intent, we find the legislative history of Act 536 to be instructive as to the legislature's intent in amending and enacting these statutes. See *Carollo v. Department of Transportation and Development*, 2021-01670 (La. 9/9/22), 346 So. 3d 751, 759. In construing statutory language, it is presumed that the legislature

---

[15] We are called upon herein to interpret, and then apply, the provisions of La. R.S. 33:1(A)(4). To the extent that the determination of whether the petition meets the statutory requirements may present a mixed question of law and fact, we note that typically, mixed questions of law and fact are subject to the manifest error standard of review. *Ogea v. Merritt*, 2013-1085 (La. 12/10/13), 130 So. 3d 888, 895 n.6. However, where there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is *de novo*. *Ogea*, 130 So. 3d at 895 n.6; see also *Richardson v. Imperial Fire & Casualty Insurance Co.*, 2014-0368 (La. App. 1st Cir. 12/30/14) 2014 WL 7390740, *2 (unpublished), writ denied, 2015-0534 (La. 6/1/15), 171 So. 3d 262. Here, where there is no factual dispute as to what is contained in the petition, the issue can be decided as a matter of law and the review of the sufficiency of the petition is *de novo*.

enacts each statute with deliberation and with full knowledge of all existing laws on the same subject; therefore, legislative language will be interpreted on the assumption that the legislature was aware of existing statutes, the rules of statutory construction, and with knowledge of the effect of their acts and with a purpose in view. *Id.* at 760.

Prior to 1984, the statute at issue only required that the petition for incorporation set forth the metes and bounds of the proposed area for incorporation, the number of inhabitants residing therein, a prayer for incorporation, and an attached certificate from the assessor of the parish wherein the proposed municipality was situated certifying the assessment of all property therein. See La. R.S. 33:51 (1983).[16] The revisions enacted by Act 536 were extensive, and in fact, prior to being adopted, the bill which enacted Act 536 also went through extensive revisions. In particular, the requirements for the petition for incorporation were thoroughly amended to almost exactly match current La. R.S. 33:1(A). Indeed, the only changes that have been made to La. R.S. 33:1(A) since Act 536 was enacted are not substantive, and La. R.S. 33:1(A)(4) remains unchanged from the language enacted by Act 536.

At a House Committee on Municipal, Parochial and Cultural Affairs meeting held during the 1984 legislative session, attendees discussed the proposed revisions and stated that the bill was the result of an interim committee study wherein intensive work was done to rework the statutes on municipal incorporation, and outside groups such as the Louisiana Municipal Association were consulted. Regarding the judicial review process and requirements of the petition for incorporation, a co-author of the bill stated that in many instances, the public is told grandiose exaggerations of the effects of an incorporation and what it will

---

[16] Louisiana Revised Statutes 33:51-55 (1983) were vacated by the amendment and reenactment of this section of the Revised Statutes by Act 536, and the redesignation of the provisions as La. R.S. 33:1-7.

afford the residents, and the truth only comes out after the incorporation is finalized. It is clear that the legislature put extensive thought into these amendments and intended to protect the residents of a proposed area for incorporation from exaggerations regarding the benefits of incorporation by inserting additional requirements for the petition for incorporation.

We do not find that the information contained in the petition for incorporation was sufficient to comply with the statutory requirements laid out in La. R.S. 33:1(A)(4). Although the petition listed the services that would be provided, the petition did not provide the necessary information to place citizens of the area to be incorporated on notice of a plan for the provision of those services. Further, a statement in the petition providing that "services will be provided subject to the availability of funds derived from taxes, license fees, permits, and other revenue which becomes available to the municipality and are authorized by state law" does not constitute a plan for the provision of those services as required by La. R.S. 33:1. Accordingly, we pretermit discussion of any other issues herein, including the alleged unreasonableness of the incorporation and the alleged adverse impact on the City of Baton Rouge.

### CONCLUSION

For the above and foregoing reasons, we sustain in part and overrule in part Chris Rials and Norman Browning's exception of no right of action and dismiss Mayor-President Sharon Weston-Broome from the suit with prejudice. We overrule Chris Rials and Norman Browning's exception of no cause of action. We dismiss Dwight Hudson, et al.'s exception of no cause of action. Additionally, we affirm the June 13, 2022 judgment of the trial court denying the incorporation, because the petition failed to comply with the requirements of La. R.S. 33:1(A)(4).

25

Costs of this appeal are assessed equally against the appellants, Chris Rials,

Norman Browning, and Dwight Hudson, *et al.*

**EXCEPTION OF NO RIGHT OF ACTION SUSTAINED IN PART AND DISMISSED IN PART; EXCEPTION OF NO CAUSE OF ACTION FILED BY CHRIS RIALS AND NORMAN BROWNING OVERRULED; EXCEPTION OF NO CAUSE OF ACTION FILED BY DWIGHT HUDSON, *ET AL.* DISMISSED; JUDGMENT AFFIRMED.**

MAYOR-PRESIDENT SHARON
WESTON BROOME, LEWIS O.
UNLESBY, AND M.E. CORMIER

VERSUS

CHRIS RIALS AND NORMAN
BROWNING, ORGANIZERS

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2022 CA 1203


CHUTZ, J., concurring.

Insofar as the exceptions filed with this court, I agree with the dispositions set forth by Judge Theriot. I note, in particular, that as a court of appeal, we are constrained to apply the jurisprudence which holds that third parties to the lawsuit must take the record as they find it. Thus, I agree that the Electors cannot question the constitutionality of the La. Acts 1984, No. 536, §1, in this appeal.

Under La. R.S. 33:4, as amended and enacted by Act 536, in addition to ascertaining the accuracy of the statements set forth in the Incorporators' petition, the district court was tasked with determining whether the petition fully complied with the provisions of La. R.S. 33:1(A). This necessarily entailed a scrutiny of all the statutory requirements, including not the mere listing of the public services the municipal corporation proposed to render but the plan for the provision of those services as well. The petition filed by Incorporators failed to include an articulation of that plan. And the trial court's conclusion that incorporation was not reasonable is logically imputable to the lack of a plan for the provision of the listed services. Because the "terse description" set forth in the Incorporators' petition was insufficient to constitute a plan for the provision of the services the incorporated municipality proposed to provide, in our review, the issue of whether the incorporation was reasonable is never reached and such a discussion is, therefore, understandably pretermitted. Accordingly, I concur.